1  Seth Aronson (S.B. #100153)
   saronson@omm.com
2  Courtney Gould (S.B. #274417)
   cgould@omm.com
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407

6  Charles E. Bachman (admitted *pro hac vice*)
   Edward N. Moss (admitted *pro hac vice*)
7  cbachman@omm.com
   emoss@omm.com
8  O'MELVENY & MYERS LLP
   7 Times Square
9  New York, NY 10036
   Telephone: (212) 326-2000
10 Facsimile: (212) 326-2061

11 *Counsel for Defendants Montage Technology*
   *Group Limited, Howard C. Yang, Stephen Tai,*
12 *and Mark Voll*

Laurence M. Rosen (S.B. #219683)
lrosen@rosenlegal.com
Phillip Kim (admitted *pro hac vice*)
pkim@rosenlegal.com
Jonathan Stern (admitted *pro hac vice*)
jstern@rosenlegal.com
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Ste. 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684

*Counsel for Lead Plaintiff and the Class*

13
14                    **UNITED STATES DISTRICT COURT**
15                    **NORTHERN DISTRICT OF CALIFORNIA**

16
17                                          Case No. 3:14-cv-00722-SI
18                                          <u>CLASS ACTION</u>
19 In re MONTAGE TECHNOLOGY GROUP           **JOINT CASE MANAGEMENT**
   LIMITED SECURITIES LITIGATION            **STATEMENT**
20
                                            Judge: The Honorable Susan Illston
21                                          Courtroom: 10
                                            Complaint Filed: February 14, 2014
22                                          Trial Date: None set

23
24
25
26
27
28

Lead Plaintiff Martin Graham and Plaintiff Shaun Shen (collectively, "Plaintiffs") and Defendants Montage Technology Group Limited, Howard C. Yang, Stephen Tai, and Mark Voll (collectively, "Defendants") jointly submit this Case Management Statement and request that the Court adopt it as its Case Management Order in this case. Although the parties have reached agreement on the majority of case management issues through several meet and confer sessions (most recently on July 1), as set forth below, they disagree about whether (i) Plaintiffs should be permitted to move for class certification based on the *Affiliated Ute* and Fraud on the Regulatory Process presumptions only, without prejudice to later moving for class certification based on the Fraud on the Market Presumption, or (ii) Plaintiffs should be required to brief all their class certification arguments at the same time.

## I.   <u>JURISDICTION AND SERVICE</u>

The parties agree that this Court has jurisdiction under 28 U.S.C. Section 1331 and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"). Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. Section 1391(b). The named Defendants have been served with the Consolidated Amended Complaint ("CAC") and have each responded by filing motions to dismiss the CAC, which were decided on January 29, 2015.

## II.   <u>FACTS</u>

<u>Plaintiffs' Statement</u>:  Montage is a manufacturer of semiconductors. It does the majority of its business through a single distributor, LQW Technology Company Limited ("LQW"). When Montage began selling its stock in US markets, it failed to disclose that LQW is actually a related party of Montage, in violation of GAAP. From February 2012 to the present, LQW was owned by Shanghai Montage Microelectronics Technology Co., Ltd. ("SMMT"). Until July of 2012 SMMT was owned by an officer of Montage. For the first half of 2012, Montage reported $8.8 million in revenues from LQW in its S-1—and for five months of this six month period, LQW was a related party. Montage never reported these as related party transactions. After July of 2012, Montage attempted to conceal its relationship with LQW from US investors by altering the on-paper ownership of SMMT, all the while secretly retaining control through straw men. In China, however, Montage made no effort to conceal its affiliation with, and control over, LQW

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

and SMMT, openly describing SMMT as a Montage subsidiary to potential employees.  SMMT and LQW have no apparent independent existence from Montage.  Their listed offices are all but non-existent, and their real location is within the offices of Montage.  When Defendants' fraud was exposed on February 6, 2014, Montage's stock immediately fell more than 25%.

Defendants' Statement:  Montage is a Cayman Islands company with its headquarters in China that designs, develops, and markets fabrication-less semiconductor solutions for the home entertainment and cloud computing markets.  Montage's largest distributor, LQW Technology Company Limited ("LQW"), is a Hong Kong entity that accounts for the majority of Montage's revenues.  On February 6, 2014, a short-seller named Gravity Research issued a report by an anonymous author alleging that Montage had committed fraud by concealing that LQW was a shell company used to fabricate Montage's revenues.  Montage's stock price dropped following Gravity's attacks, and Lead Plaintiff Graham immediately filed a federal securities action in New York parroting the allegations in the Gravity report.

Montage and LQW are not related parties under GAAP, and Gravity's allegations were refuted by an independent investigation by Montage's Audit Committee, with assistance from counsel (Jones Day) and forensic accountants (FTI Consulting).  Among other findings, Montage's Audit Committee found no conclusive evidence that Montage owns or otherwise has an inappropriate relationship with LQW.  As a result, Montage announced that it continued to believe that the Gravity Report allegations lacked merit and the Company did not anticipate any changes to its previously reported financial results.

Following the Gravity Report, Montage continued to announce strong 2014 financial results.  In March 2014, Montage announced that it had received a preliminary non-binding proposal from Shanghai Pudong Science and Technology Investment Co., Ltd. ("PDSTI"), a wholly state-owned limited liability company directly under the Shanghai government, to acquire all of Montage's outstanding ordinary shares.  After Montage's Board of Directors and its advisors evaluated strategic alternatives to increase shareholder value, Montage entered into a merger agreed with PDSTI for a per-share cash price of $22.60, $1.39 more than Montage's closing price on the day before the Gravity Report was issued.  (That transaction has now closed.)

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

In July 2014, after the announcements regarding the Audit Committee investigation and the PDSTI transaction, Lead Plaintiff filed the CAC, which abandoned the revenue-misstatement allegations and alleged only that Montage had misled investors about its relationship with LQW.

## III.   LEGAL ISSUES

Plaintiffs allege violations of Section 10(b) of the Exchange Act and Rule 10b-5 against Montage and Messrs. Yang and Voll, as well as violations of Section 20(a) of the Exchange Act against Messrs. Yang, Voll, and Tai, on behalf of a putative shareholder class.

Defendants deny that their conduct violates any laws or caused any damages.  Legal issues include, among other things, whether the elements of each claim are satisfied, whether a class may be properly certified, whether Plaintiffs are adequate representatives of any class, and whether any damages were caused by the alleged Exchange Act violations.

## IV.   PRIOR AND ANTICIPATED MOTIONS

On September 22, 2014, Defendants filed a motion to dismiss Plaintiffs' CAC.  The Court issued its Order denying that motion on January 29, 2015.  There are no motions pending.  The parties' respective statements regarding anticipated motions, as well as a joint statement regarding possible discovery motions, are set forth below.

Plaintiffs' Statement:  Plaintiffs anticipate filing a motion for class certification.  Because reliance is an element of the causes of action alleged here, a major issue in the class certification motion will be whether Plaintiffs are entitled to a presumption of reliance.  Plaintiffs believe that this action is certifiable as a class action pursuant to the *Affiliated Ute* presumption, the Fraud on the Regulatory Process presumption, and the Fraud on the Market presumption.

Plaintiffs believe that the interests of judicial economy and efficiency would be better served by allowing Plaintiffs to initially move for class certification based on the *Affiliated Ute* and Fraud on the Regulatory Process presumptions alone, without prejudice to later move for class certification based on the Fraud on the Market presumption, in the event that the Court does not find that the first two presumptions apply.  Proof of the Fraud on the Market presumption entails proving that the market for Montage stock was efficient during the Class Period.  This requires retention of financial economists to opine on market efficiency, and the cost of retaining

1   such experts alone will likely exceed $200,000 for Plaintiffs, and in the experience of Plaintiffs'

2   counsel is often twice that amount for Defense experts.  The work of a market efficiency expert is

3   in addition to any expert that the parties are required to retain to address damages and loss

4   causation because the analysis of market efficiency does not overlap with a damages analysis and

5   so is a wholly unnecessary cost if the Court finds applicable the *Affiliated Ute* or Fraud on the

6   Regulatory Process presumptions of reliance.  While it is true that both damages analysis and

7   market efficiency analysis  use "event studies" that does not mean that the work overlaps.  The

8   term "event study" refers to a methodology for statistical analysis, and the subject matter of an

9   event study for class certification purposes includes a number of events during the class period as

10  a whole.  By contrast, the subject matter for an event study in the damages context is more

11  narrowly focused on the date(s) of the revelation of the fraud.  Any overlap of work would be

12  minimal.  Litigating market efficiency would also greatly increase the amount of attorney time

13  necessary to brief class certification.  The money spent on Plaintiffs' experts and attorney time

14  will eventually be borne by the Class in the event of settlement or a favorable judgment.  And the

15  $400,000 or more that defendants will spend on market efficiency will reduce the amount of D &

16  O insurance available to settle these claims and distribute to class members.

17      Addressing the *Affiliated Ute* and Fraud on the Regulatory Process presumptions first is

18  also more efficient for the Court.  If the Court does find that the *Affiliated Ute* or Fraud on the

19  Regulatory Process presumption applies, it would not need to consider the Fraud on the Market

20  Presumption, which is a more fact-intensive and time-consuming matter.  Even if the Court found

21  that the *Affiliated Ute* and Fraud on the Regulatory Process presumptions do not apply, there

22  would be no duplication of effort on the parts of the parties or the Court because the Court could

23  resolve all issues regarding class certification except market efficiency on the first round of

24  briefing, and would need to resolve only market efficiency on the second round.

25      In addition, this approach is warranted because the *Affiliated Ute* and Fraud on the

26  Regulatory Process presumptions are likely to apply:

27      *Affiliated Ute:* In a securities class action that alleges omissions, rather than

28  misstatements, Plaintiffs need not prove reliance to certify a class.  All that is necessary is that the

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

1   facts withheld be material in the sense that a reasonable investor might have considered the

2   omitted information important in deciding whether to buy or sell the subject security. *Affiliated*

3   *Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  Even where a case includes both

4   affirmative misstatements and material omissions, a case is still "primarily" an omissions case if

5   the misstatement is merely a general representation and the focus of Plaintiffs' claims is what

6   defendants did not disclose. *In re Keegan Mgmt. Co. Sec. Litig.*, No. CIV. 91-20084 SW, 1991

7   WL 253003, at *4 (N.D. Cal. Sept. 10, 1991). Plaintiffs believe that the *Affiliated Ute*

8   presumption applies because this case is primarily a case alleging material omissions, in that the

9   underlying theory of the case is that Defendants had a duty to disclose that its largest distributor,

10   LQW was a related party.  The fact that Defendants also referred to LQW as "independent" does

11   not change the fact that this case primarily is an omissions case, because even in the absence of

12   that misstatement, Defendants' SEC filings would have been exactly as misleading for exactly the

13   same reason—that they had a duty to disclose the related party nature of LQW.  It is notable that

14   in briefing and deciding the motion to dismiss, neither party nor the Court even identified

15   Montage's positive statement that that LQW is "independent" as a potential issue in the case.

16        *Fraud on the Regulatory Process:* The basis of the Fraud on the Regulatory Process

17   presumption is that, in cases involving misstatements or omissions in the course of securities

18   issuances "the investor relied, at least indirectly, on the integrity of the regulatory process and the

19   truth of any representations made to the appropriate agencies and the investors at the time of the

20   original issue." *Wade v. Indus. Funding Corp.*, No. C 92-0343 TEH, 1993 WL 594019, at *4

21   (N.D. Cal. Dec. 14, 1993).  This case involves an original issuance of securities by registration

22   statement, and therefore, Plaintiffs are entitled to the presumption that class members relied on

23   any misrepresentations or omissions that were included in the original issue.  Plaintiffs

24   understand that Defendants' position is that the Fraud on The Regulatory Process presumption is

25   not applicable to shareholders who cannot trace their purchases to the initial offering, but that

26   argument confuses a standing issue applicable to causes of action under Section 11 of the

27   Securities Act, with the question of reliance under section 10(b)(5).  "Presumed reliance is a

28   function of materiality coupled with the common sense and probability that investors will behave

1  reasonably." *Wade v. Indus. Funding Corp.*, No. C 92-0343 TEH, 1993 WL 594019, at *4 (N.D.

2  Cal. Dec. 14, 1993).  Common sense suggests that where, as here, any alleged misstatements or

3  omissions were present in the initial offering documents, a reasonable investor would have relied

4  on the regulatory process to prevent any securities containing such misrepresentations or material

5  omissions from going to market.  There is no logical reason why investors would cease to rely on

6  the integrity of the regulatory process simply because other SEC filings were issued by the

7  Company in the interim, particularly where all of those filings omitted to disclose that Montage's

8  largest distributor, LQW, was a related party.

9       Plaintiffs also do not believe that any decision by the Ninth Circuit warrants abandoning

10  the Fraud on the Regulatory Process presumption.  The Fraud on the Regulatory Process

11  presumption was ratified by the Ninth Circuit in *Arthur Young & Co. v. United States District*

12  *Court*, 549 F.2d 686 (9th Cir. 1977).  That decision has not been overturned by an *en banc* panel

13  of the Ninth Circuit nor the Supreme Court, and was most recently cited in a published decision

14  in a Court in this Circuit in *In re Metropolitan Securities Litigation*, which upheld the validity of

15  a presumption of reliance on the integrity of the regulatory process and held not only that *Arthur*

16  *Young* remains valid law, but that it should be extended to a matter falling under Washington

17  State securities laws.  *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1303 (E.D. Wash. 2007).  It

18  was also a basis for certifying a class in the Central District of California in an order issued in

19  2006.  *In re Entropin, Inc. Securities* Litigation, No. CV-04-06180 RSWL (CWx) (CD Cal. Feb

20  10, 2006).  And the Ninth Circuit's decision in *Desai* does not hold that the Supreme Court has

21  foreclosed recognition of any presumption of reliance other than Fraud on the Market and

22  *Affiliated Ute*; it merely held that a court does not abuse its discretion by declining to consider a

23  "novel" presumption.  *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 942 (9th Cir. 2009).

24  But the Fraud on the Regulatory Process presumption is not novel, it was first recognized by the

25  Ninth Circuit in *Arthur Young & Co*. in 1977.  Therefore, the Fraud on the Regulatory Process

26  presumption would likely establish reliance.

27       Plaintiffs also anticipate filing a motion for summary judgment.

28       Defendants' Statement:  Defendants anticipate opposing Plaintiffs' motion for class

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

1   certification and filing a motion for summary judgment.

2   As for the former, Plaintiffs should not have two bites at the class-certification apple.

3   Plaintiffs' proposal is not about judicial economy or efficiency, but rather it is Plaintiffs' attempt

4   to avoid investing resources in this case while forcing Defendants to brief, and this Court to

5   consider, two rounds of briefing on the same issue.  The Court should reject this novel proposal.

6   *First*, Plaintiffs' proposal would not promote judicial efficiency.  If the Court were to

7   order Plaintiffs to brief all their grounds for class certification at once, and it were to decide that

8   Plaintiffs prevailed on either the *Affiliated Ute* or Fraud on the Regulatory Process presumption, it

9   would not need to consider the Fraud on the Market portion of the briefing.  And if the Court

10  needs to reach the Fraud on the Market theory, it will do so regardless of whether the parties'

11  arguments on that presumption are included in the first round of briefing or the second.  Thus, the

12  Court will likely consider the same issues either way.

13  *Second*, Plaintiffs' proposal would not help them conserve meaningful resources, even if

14  they were to prevail on class certification in their "first" round of briefing, because they would

15  still have to hire a damages expert whose work would overlap with the work required to support a

16  Fraud on the Market argument.  For example, for both the efficient-market and damages analyses,

17  Plaintiffs' expert would need to perform an "event study" to determine the effect (if any) of the

18  alleged corrective disclosure on Montage's stock price while controlling for market and industry

19  drivers, which would include running a regression and reviewing market and company news and

20  data.  The event study is at the core of the expert work in both phases of the litigation, meaning

21  that even under Plaintiffs' proposal, they will still have to commission this work.

22  *Finally*, Plaintiffs' proposal will likely waste time on two rounds of briefing because they

23  are unlikely to prevail on class certification  under both *Affiliated Ute* and Fraud on the

24  Regulatory Process.

25  *Affiliated Ute*:  The *Affiliated Ute* presumption of reliance applies only where plaintiffs

26  primarily allege omissions.   It is not available where, as here, the allegations are "best

27  characterized" as affirmative misrepresentations or a mix of affirmative misrepresentations and

28  omissions. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004) (declining to apply

1  *Affiliated Ute* presumption); *In re GenesisIntermedia, Inc. Secs. Litig.*, 2007 U.S. Dist. LEXIS

2  95253, at *24 (C.D. Cal. June 28, 2007) ("[T]he Ninth Circuit focuses on whether the case—not

3  individual claims—involves primarily omissions.").  Plaintiffs' allegations here are best

4  characterized as a mix of misrepresentations and omissions.  Plaintiffs themselves characterize

5  the case as mixed, including in their allegations *about reliance*.  (*See* CAC ¶¶ 96–97 (alleging

6  Defendants "had actual knowledge of the *misrepresentations* and omissions of material facts" and

7  claiming that they acquired Montage securities "*relying directly or indirectly on the false and*

8  *misleading statements made by defendants* . . . and/or on the absence of material adverse

9  information that was known to or recklessly disregarded by the Defendants but not disclosed . . .

10  .") (emphasis added).)

11         And although Plaintiffs allege that Defendants concealed that LQW and Montage were

12  related parties, they also allege that Defendants affirmatively misrepresented the exact opposite—

13  that LQW was an independent distributor.  (*See* CAC ¶¶ 23–28 (alleging Montage represented

14  that 82% of its net revenues came from "independent distributors," including LQW).)  *See also*

15  *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 613–14 (S.D. Cal. 2007)

16  (explaining that the *Affiliated Ute* presumption does not apply when plaintiffs identify as an

17  "omission" the mere corollary  of an affirmative misstatement—*i.e.*, that a defendant failed to

18  disclose that an "allegedly misleading fact was untrue*"); *In re GenesisIntermedia,* 2007 U.S.

19  Dist. LEXIS 95253, at *24 (declining to apply *Affiliated Ute* because plaintiffs alleged both

20  omissions and misrepresentations and thus claims did not rest primarily on omissions).  Plaintiffs

21  therefore do not "primarily" allege omissions and are not entitled to the *Affiliated Ute*

22  presumption.

23         *Fraud on the Regulatory Process*:  Plaintiffs likewise cannot certify a class based on the

24  Fraud on the Regulatory Process presumption.  Plaintiffs' reliance on *Arthur Young*, a nearly 40-

25  year-old precedent which does not appear to have been relied on in this District to certify a class

26  in the last 20 years, is misplaced.  In *Arthur Young*, the court considered whether Kaufman, one

27  of the plaintiffs, should be required to prove reliance for his claim under Section 10(b) of the

28  Exchange Act that was based on misrepresentations in the prospectuses for the offering of

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

1    interests in several partnerships.  549 F.2d at 689.  The Ninth Circuit explained that "[j]ust as the

2    open market purchaser relies on the integrity of the market . . . so the purchaser of *an original*

3    *issue security* relies, at least indirectly, on the integrity of the regulatory process and the truth of

4    any representations made to the appropriate agencies and the investors at the time of the original

5    issue."  *Id.* at 695 (emphasis added).  Implicit in the court's analysis was that (i) Kaufman could

6    not possibly have relied on the integrity of the market (because there was no market at the time of

7    the initial offering), and (ii) any investor would have purchased interests offered by means of the

8    initial prospectus only.  That rationale, however, does not apply to a case where, as here,

9    Plaintiffs allege a class that consists of some investors who purchased securities after Montage's

10   September 26, 2013 initial offering, and others who purchased after its January 31, 2014

11   secondary offering, which purchases cannot be traced to either offering.  Thus, unlike *Arthur*

12   *Young,* the alleged class of investors here traded in a market which is capable of being analyzed

13   for its efficiency and its amenability to the Fraud on the Market doctrine.  This is underscored by

14   the fact that Plaintiffs' claims rest in part on alleged misrepresentations in a Form 10-Q.

15   Accordingly, there is no reason that Plaintiffs cannot perform a Fraud on the Market analysis

16   here.

17          Moreover, Defendants are unaware of any cases in this District applying the presumption

18   in the last twenty years.  In fact, the Ninth Circuit explained in 2009 in *Desai v. Deutsche Bank*

19   *Sec. Ltd.* that the Supreme Court's 2008 opinion in *Stoneridge* "listed the *Affiliated Ute*

20   presumption and the fraud on the market presumption as the two reliance presumptions it has

21   recognized," and therefore held that the district court did not abuse its discretion in refusing to

22   recognize a new presumption (the "integrity of the market" presumption).  573 F.3d 931, 942 (9th

23   Cir. 2009).  The next year, the Eastern District of California explained that *Desai* "calls into

24   question the continued validity of the 'fraud created the market' doctrine" (which was first

25   adopted by the Fifth Circuit in 1981 but never adopted by the Ninth Circuit), and that both

26   "*Stoneridge* and *Desai* caution against allowing [plaintiff to rely on it]."  *George v. Cal.*

27   *Infrastructure & Econ. Dev. Bank*, 2010 U.S. Dist. LEXIS 57401 (E.D. Cal. June 10,

28   2010).  Although *Desai* did not expressly involve the Fraud on the Regulatory Process doctrine, it

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

1    clearly enunciated the proposition that after *Stoneridge*, there are likely only two viable reliance

2    presumptions remaining (*i.e.*, *Affiliated Ute* and Fraud on the Market), and thus courts should

3    refrain from applying others.  Plaintiffs' reliance on *In re Metro and In re Entropin* does not

4    change the analysis because those out-of-District cases were decided before both *Desai* and

5    *Stoneridge*.  There is then no basis for this Court to invoke a nearly 40-year-old, pre-PSLRA

6    doctrine that does not appear to have been applied in this District in decades and has never been

7    recognized by the Supreme Court.

8         Plaintiffs' proposal to bifurcate class certification briefing should be rejected.  It will not

9    save time or resources (the Court's or even Plaintiffs'), and it will most likely result in two rounds

10   of briefing.

11        Joint Statement on Possible Discovery Motions:  The parties anticipate that discovery

12   disputes may arise in this matter, particularly because Defendants may assert that some

13   documents located within the People's Republic of China are subject to a "state secret" privilege.

14   The parties will seek to resolve such issues in good faith, but if they cannot do so, motions related

15   to the scope of discovery will be necessary, as will, potentially, motions to compel.

16   **V.**     **AMENDMENT OF PLEADINGS**

17        If Plaintiffs wish to file an amended complaint, they will do so on or before September 14,

18   2015.  Should Plaintiffs do so, Defendants will have 60 days to answer or otherwise respond.  If

19   Plaintiffs wish to file an amended complaint after September 14, 2015, they will seek leave of the

20   court to do so.

21   **VI.**    **EVIDENCE PRESERVATION**

22        The parties have reviewed the Guidelines Relating to the Discovery of Electronically

23   Stored Information and conferred on June 2, 2015 under Federal Rule of Civil Procedure 26(f)

24   regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues

25   reasonably evident in this action, and have each represented that steps have been taken to

26   preserve such evidence relevant to the issues reasonably evident in this action.

27        To the extent it exists, Plaintiffs have retained relevant documents and evidence in their

28   possession, custody, or control.  Defendant Montage has instructed individuals, including the

1   three Individual Defendants, to preserve information relevant to the litigation.  The parties will

2   continue to discuss whether and to what extent any additional steps may be necessary to ensure

3   the preservation of relevant evidence.  The parties will meet and confer regarding the scope and

4   nature of electronic discovery in this case as required by and consistent with applicable law and

5   the local rules.  If the parties are unable to reach an understanding on evidence preservation or

6   electronic discovery, the disputed matter will be submitted to the Court for a formal order.

7   **VII.   DISCLOSURES**

8          The parties made their initial Federal Rule of Civil Procedure 26(a)(1)(A) disclosures on

9   June 16, 2015.

10  **VIII.   DISCOVERY PLAN**

11          **a.      Discovery Taken to Date**

12          After the Rule 26(f) conference on June 2, 2015, Plaintiffs served their first set of

13  document requests on Defendants.

14          **b.      Timing and Scope of Anticipated Discovery**

15          The parties began proceeding with discovery after the Rule 26(f) conference on June 2,

16  2015.

17          Discovery is expected to cover the factual and legal issues identified above.  Plaintiffs

18  intend to seek discovery regarding, among other subjects, the founding, management, and

19  ownership of LQW and SMMT, practices and procedures regarding compliance with GAAP and

20  GAAS, Defendants' financial records, the extent and nature of the relationship between LQW and

21  Montage, Defendants' and Montage employees' correspondence regarding LQW and SMMT, and

22  the ownership of Montage stock.  Defendants will seek discovery regarding, among other

23  subjects, Plaintiffs' investigation of the CAC's allegations, evidence of trading history for their

24  stocks, any research conducted into stock before purchase, any instances of other cases where

25  Plaintiffs have sued issuers, and the level of Plaintiffs' knowledge of Montage's SEC filings.  The

26  parties' proposed discovery schedule is set forth below.

27          **c.      Parties' Willingness to Enter Into a Stipulated E-Discovery Order**

28          The parties have not yet identified any issues or anticipated disputes with respect to

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

1  electronically-stored information ("ESI") or claims of privilege or protection of trial-preparation

2  material.  The parties have not yet agreed to a stipulated e-discovery order but will further meet

3  and confer about whether entering into such an order is appropriate in this case.

4          **d.      Federal Rule of Civil Procedure 26(f) Plan**

5          The parties conducted a preliminary Federal Rule of Civil Procedure 26(f) conference on

6  June 2, 2015.  The parties made their initial disclosures under Federal Rule of Civil Procedure

7  26(a)(1) on June 16, 2015.

8          A protective order will be necessary to protect trade secret and other confidential

9  information that is disclosed during discovery and trial.  The parties will meet and confer

10  regarding such an order and will submit a stipulated proposed protective order for the Court's

11  review.

12          The parties do not anticipate deviating from Federal Rules of Civil Procedure limitations

13  on discovery, but each reserves the opportunity to seek leave of the limitations if necessary.

14  **IX.    <u>CLASS ACTIONS</u>**

15          Under Civil Local Rule 16-9(b), Plaintiffs' views on class certification are as follows:

16          **a.      The Specific Paragraphs of Federal Rule of Civil Procedure 23 under which**

17  **the Action is Maintainable as a Class Action**

18          Plaintiffs assert that this action is maintainable under subparagraph (b)(3) of Federal Rule

19  of Civil Procedure 23.

20          **b.      Description of the Class or Classes in Whose Behalf the Action is Brought**

21          Plaintiffs assert that the Class consists of all persons and entities, other than defendants

22  and their affiliates, who purchased the securities of Montage from September 25, 2013 to

23  February 6, 2014, inclusive and did not sell such securities prior to February 6, 2014

24          **c.      Facts Showing that Plaintiffs are Entitled to Maintain the Action under**

25  **Federal Rule of Civil Procedure 23(a) and (b)**

26          Plaintiffs assert the following:

27          **Numerosity:** The members of the Class are so numerous that joinder of all members is

28  impracticable. Throughout the Class Period, Montage securities were actively traded on

NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.

**Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class because all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law.

The claims of all class members derive from the same legal theories alleged by Plaintiffs and involve the same set of operative facts—namely, that Defendants failed to disclose the existence of related party transactions in which Montage was engaged.  Plaintiffs, like the other class members, purchased Montage's common stock and thereby suffered damages as a consequence of Defendants' actions and inactions.

**Adequacy:** Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  In addition, Plaintiffs are well suited to represent the class.  Plaintiffs' interests are the same as those of absent class members, and there are not conflicts between them and the class.

**Commonality:** Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by defendants as alleged herein;
- whether statements made by defendants misrepresented material facts about the business, operations and management of Montage; and
- to what extent the members of the Class have sustained damages and the proper measure of damages.

**Predominance:**  As stated above, there are common questions of law and fact in this case.  The typical issue regarding predominance in the securities fraud context is the question of reliance.

Plaintiffs allege their reliance should be presumed for any claim asserted which requires a showing of reliance and that they are entitled to a presumption of reliance under each of the following theories:

*Affiliated Ute*:  Neither Plaintiffs nor the Class need prove reliance—either individually or as a class because under the circumstances of this case, which involves a failure to disclose that LQW was a related party positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  As the Supreme Court explained, requiring plaintiffs to describe how they would have behaved had the omitted information been disclosed places an unrealistic burden on plaintiffs.

**Fraud on the Regulatory Process:** The Fraud on the Regulatory Process presumption of reliance was created by the 9th Circuit in *Arthur Young and Co. v. United States District Ct.*, 549 F. 2d 686 (9th Cir. 1976), cert. denied, 434 U.S. 829 (1977).  In its S-1 filing for its IPO, Montage omitted to disclose material facts to the Securities & Exchange Commission and NASDAQ in applying for and obtaining permission to sell Montage stock publicly in the IPO and having those securities listed for trading on NASDAQ.  Montage failed to disclose that its largest distributor responsible for over 50% of its revenue was a related party.  Investors relied on the integrity of the regulatory process when purchasing Montage stock.  Defendants' omissions were a fraud on the regulatory process, permitting Plaintiffs a presumption of reliance.

**Fraud on the Market:** Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)      The Company's stock traded in an efficient market;

(d)      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)      Plaintiffs and other members of the Class purchased Montage common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

At all relevant times, the market for Montage common stock was efficient for the following reasons, among others:

(a)      As a regulated issuer, Montage filed periodic public reports with the SEC. Montage met the requirements for listing, and was actively traded on the NASDAQ, under ticker MONT;

(b)      As of September 30, 2013, there were 22.7 million shares in Montage's public float, and 27.5 million Montage shares were outstanding;

(c)      During the Class Period, an average of 1,243,037 Montage shares were traded weekly, or about 6.7% of Montage's publicly traded float and 5.5% of Montage's total shares outstanding;

(d)      Montage regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

(e)      Montage was eligible to file short-form registration statements with the SEC on Form S-3;

(f)      Montage was followed by numerous analysts that issued reports about it, including Stifel Nicolaus, Chardan Capital Markets, Topeka Capital Markets, Deutsche Bank, EVA Dimensions, Barclays, Needham & Co., Wells Fargo Securities, and Makor Capital.

(g)      New company specific information was rapidly reflected in the Company's stock price.

(h)      More than twenty firms made a market in the Company's stock on the NASDAQ.

1    Even if the market for Montage stock is not found to be efficient in general, Plaintiffs will

2    satisfy the fraud on the market presumption by directly demonstrating that the fraud alleged in the

3    Complaint had an impact on the market price of Montage Stock pursuant to the Supreme Court's

4    decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2417, 189 L. Ed. 2d 339

5    (2014).

6    **Superiority:** A class action is superior to all other available methods for the fair and

7    efficient adjudication of this controversy since joinder of all members is impracticable.

8    Furthermore, as the damages suffered by individual Class members may be relatively small, the

9    expense and burden of individual litigation make it impossible for members of the Class to

10   individually redress the wrongs done to them.  There will be no difficulty in the management of

11   this action as a class action.

12   Defendants reserve all of their rights to oppose class certification on any grounds.

13   **d.    Proposed Date for the Court to Consider Whether the Case Can Be**

14   **Maintained as a Class Action**

15   The parties agree that Plaintiffs' class certification motion should be heard no later than

16   October 2, 2015.

17   **X.    RELATED CASES**

18   The parties are not aware of any related cases or proceedings pending before another

19   judge of this court, or before another court or administrative body.  Before bringing this action,

20   Lead Plaintiff filed a federal securities action in New York on February 6, 2014, based on the

21   same allegations pleaded here: *Martin Graham v. Howard C. Yang et al.*, 14-cv-0794 (S.D.N.Y.).

22   On February 14, 2014, the Company and Individual Defendants were named in another putative

23   class action lawsuit filed in the United States District Court for the Northern District of California

24   and captioned *Janice Kenny v. Montage Technology Group Limited et al.*, Case Number 3:14 cv

25   722 (N.D. Cal.).  A few days later, other shareholders also filed complaints in New York: *Maria*

26   *Cecilia Ghilardotti v. Montage Technology Group Limited et al.*, 14-cv-1105 (S.D.N.Y.) and

27   *Zhao Erdi v. Montage Technology Group Limited et al.*, 14-cv-1105 (S.D.N.Y.).  The New York

28   actions were all transferred to this Court and consolidated with the *Kenny* action under the caption

- 16 -

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

*In re Montage Technology Group Limited Securities Litigation.*

**XI.   RELIEF**

Plaintiffs' CAC seeks the following relief:

a.      Compensatory damages in favor of Plaintiffs and the other putative Class members against all Defendants, jointly and severally, for all damages allegedly sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

b.      Rescissory damages;

c.      Such other and further relief as the Court may deem just and proper.

Defendants deny that Plaintiffs or putative class members are entitled to any of the relief listed above.

**XII.   SETTLEMENT AND ADR**

On November 13, 2014, the parties engaged in confidential private mediation but did not resolve the case.  Per Alternative Dispute Resolution Local Rule 3-5, the parties have discussed the possibility of again engaging in alternative dispute resolution during the meet and confer process and preliminarily agreed to consider private mediation again at some point in the future. Given the recent failed attempt to mediate, however, the parties believe that it would be premature to engage in settlement discussions at this time.

**XIII.   MAGISTRATE JUDGE**

The parties are not willing to submit this matter to a Magistrate Judge for all purposes.

**XIV.   OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XV.   NARROWING OF ISSUES**

The parties do not presently see any possibility for narrowing the issues.  The parties are not presently in a position to address whether: (a) it is feasible or desirable to bifurcate issues for trial; or (b) it is possible to reduce the length of the trial by stipulation, use of summaries or other expedited means of presenting issues.  The parties will in good faith continue to explore the possibility of narrowing issues by agreement.

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI

## XVI.   EXPEDITED SCHEDULE

The parties do not believe this is the type of case that should be handled on an expedited basis with streamlined procedures.

## XVII. SCHEDULING

The parties believe that the discovery schedule should be flexible to deal with the reality that this is a securities fraud action involving Defendants and witnesses located in China, many of whom do not speak English; further, many documents written in Chinese will need to be translated and both U.S. and Chinese accounting rules and conventions will apply.

The parties also recognize that documents and testimony may attempt to be compelled from non-parties in China.  The party seeking such documents and testimony will need to apply for letters rogatory, and such letters rogatory will need to be sent to the Chinese Central Authority for service.  *See* United States Department of State, China Judicial Assistance, available at http://travel.state.gov/law/judicial/judicial_694.html.  The parties anticipate that this will be a time-consuming process.

Accordingly, the parties propose the following schedule:

| | |
|---|---|
| Preliminary Rule 26(f) Conference: | June 2, 2015 |
| Discovery begins: | June 2, 2015 |
| Amendment of pleadings: | September 14, 2015 |
| Plaintiffs' class certification motion: | October 8, 2015 |
| Opposition to class certification: | Within 60 days from Plaintiffs' motion for class certification |
| Reply brief on class certification: | Within 60 days from Defendants' opposition to class certification |
| Class Certification Hearing: | As scheduled by the Court |
| Plaintiffs' expert report: | June 26, 2016 |
| Defendants' expert report(s): | September 9, 2016 |
| Discovery motion filing deadline: | November 8, 2016 |
| Fact and Expert discovery cut off: | December 23, 2016 |

| | |
|---|---|
| Dispositive Motion filing deadline: | April 17, 2017 |
| Dispositive motion hearing: | July 21, 2017 |
| Pretrial conference: | August 25, 2017 |
| Trial: | September 25, 2017 |

In the event that the Court permits Plaintiff to file a motion for Class Certification relying only on the *Affiliated Ute* and Fraud on the Regulatory Process presumptions, and the Court denies Plaintiffs' motion for Class Certification, the parties will confer in an effort to propose a joint briefing schedule.

## XVIII. TRIAL

This case will be tried to a jury for those claims that may be so adjudicated and that survive to trial. While the length of trial depends on the outcome of Plaintiffs' class certification motion and any motions for summary judgment, the parties expect that trial likely could be completed in five to eight days.

## XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On March 25, 2014, under Civil Local Rule 3-15, Defendants filed a Certification of Interested Entities. Following the November 19, 2014 transaction with PDSTI, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: PDSTI, through PKM Holding Co., Ltd., a direct and wholly-owned subsidiary of PDSTI's direct and wholly-owned subsidiary Shanghai Pu Ke Investment Holding Co., Ltd. (20.02% holder of Montage stock); CEC Industrial Development Investment Inc. (25.30%); Neptune Connection Ltd. (38.29%); CEC Capital Fund, L.P. (13.73%); SK Telecom China Fund I, L.P. (.43%); Ian Matthew Brooks (.03%); Apex Result Investments Ltd. (2.13%); and Global-i Consulting Ltd. (.07%).

1  Dated:  July 2, 2015

2

O'MELVENY & MYERS LLP

By:     /s/ Edward N. Moss
            Edward N. Moss

3

4

Seth Aronson (S.B. #100153)
Courtney Gould (S.B. #274417)
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: saronson@omm.com

5

6

7

8

Charles E. Bachman (admitted *pro hac vice*)
Edward N. Moss (admitted *pro hac vice*)
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: cbachman@omm.com
Email: emoss@omm.com

9

10

11

12

*Counsel for Defendants Montage Technology
Group Limited, Howard C. Yang, Stephen Tai,
and Mark Voll*

13

14  Dated:  July 2, 2015

15

THE ROSEN LAW FIRM, P.A.

16

By:     /s/ Jonathan Stern
            Jonathan Stern

17

18

Laurence M. Rosen (S.B. # 219683)
Phillip Kim (admitted *pro hac vice*)
Jonathan Stern (admitted *pro hac vice*)
355 South Grand Avenue, Ste. 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

19

20

21

22

23

*Counsel for Lead Plaintiff and the Class*

24

25

26

27

28

1

**CASE MANAGEMENT ORDER**

2      The Case Management Statement is hereby adopted by this Court as the Case

3   Management Order for the case, and the parties are ordered to comply with this Order.  In

4   addition, the Court orders that a further Case Management Conference will be held on

5   _____.

6      IT IS SO ORDERED.

7

8   DATED: _____      _____

9                                                                THE HONORABLE SUSAN ILLSTON
                                                                      UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CIVIL L.R. 5-1 ATTESTATION**

I, Jonathan Stern, am the ECF User whose ID and Password are being used to file this

**JOINT CASE MANGEMENT STATEMENT.**  In compliance with Civil L.R. 5-1(i)(3), I

hereby attest that Edward N. Moss, counsel for Counsel for Defendants Montage Technology

Group Limited, Howard C. Yang, Stephen Tai, and Mark Voll, has concurred to its filing.

Dated:  July 2, 2015                                              /s/  Jonathan Stern
                                                                          Jonathan Stern

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

The undersigned hereby certifies that a true and correct copy of the above and foregoing

4

document has been served on July 2, 2015, to all counsel of record who are deemed to have

5

consented to electronic service via the Court's CM/ECF system per Civil L.R. 5-1(h).  Any

6

counsel of record who have not consented to electronic service through the Court's CM/ECF

7

system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

8

<u>/s/  Jonathan Stern</u>
Jonathan Stern

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JT. CASE MANAGEMENT STMT.
AND [PROPOSED] ORDER
NO. 3:14-CV-00722-SI