THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

*Class Counsel for Class
Representatives and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MONTAGE TECHNOLOGY GROUP LIMITED SECURITIES LITIGATION | Master File No 14-cv-0722 (SI) |
| | CLASS ACTION |
| This Document Relates To:  All Actions | |

## NOTICE OF CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

PLEASE TAKE NOTICE that at 2:00 p.m. on December 15, 2017, or as soon thereafter as counsel may be heard, before the Honorable Susan Illston, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, California, Class Representatives Martin Graham and Shaun Shen ("Class Representatives") will move for final approval of the Settlement and approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between the parties.

This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration Laurence M. Rosen in Support of the Motions for (1) Final Approval of the Class Action Settlement and Plan of Allocation and (2) Approval of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Rosen Declaration" or "Rosen Decl."); and the exhibits filed therewith.

i

1
2          **<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

3          1.      Whether the preliminarily approved Settlement be finally approved.

4          2.      Whether the proposed Settlement, on the terms and conditions provided for in the

5    Stipulation and Agreement of Settlement filed on July 10, 2017 (Dkt. No. 130-1) is fair,

6    reasonable and adequate to the Settlement Class and should be approved by the Court.

7          3.      Whether the Plan of Allocation is fair, reasonable, and adequate.

8          4.      Whether the Notice satisfies due process and is in compliance with Fed. R. Civ. P.

9    23(e).

10         5.      Whether a Judgment should be entered herein.

11         6.      To rule upon such other matters as the Court may deem appropriate.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation,
Case No. 14-cv-00722-(SI)

1

**TABLE OF CONTENTS**

2
I.  OVERVIEW OF THE LITIGATION ........................................................................1

3
    A.  The Settlement Negotiations...........................................................................4

4
    B.  Preliminary Approval and Notice ...................................................................4

5
II.  THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR,

6
REASONABLE, AND ADEQUATE...........................................................................5

7
    A.  Standard ...........................................................................................................5

8
    B.  All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the

9
    Proposed Settlement ..............................................................................................6

10
        1.  Strength of Class Representatives' Case, and the Risk, Expense, Complexity and

11
        Likely Duration of Further Litigation.......................................................................6

12
        2.  The Amount Offered in the Settlement ...........................................................9

13
        3.  Risk of Maintaining a Class Action..............................................................10

14
        4.  Stage of the Proceedings...............................................................................11

15
        5.  Experienced Counsel Concur that the Settlement, Which was Negotiated in Good

16
        Faith and at Arm's-Length, is Fair, Reasonable, and Adequate.......................12

17
        6.  The Reaction of the Class Members to the Settlement................................12

18
III.  The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)....13

19
    A.  The Dissemination Plan Satisfies Due Process.............................................13

20
    B.  The Contents of the Notice Satisfy Due Process ..........................................14

21
IV.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...........................14

22
V.  CONCLUSION ................................................................................................15

23

24

25

26

27

28

iii

1

**Cases**

*Boyd v. Bank of Am. Corp.*
    No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................ 11

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .................................................................................. 5, 14

*Colesberry v. Ruiz Food Products, Inc.*,
    No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. Jun. 30, 2006) ................................... 13

*D'Amato v. Deutsche Bank*
    236 F.3d 78 (2d Cir. 2001) ........................................................................................ 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................................................. 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................................. 13

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................. 11

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) .................................................................................... 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 5

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................. 14

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................ 6, 7

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ........................................................................................ 9

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .......................................................................... 14

*In re Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 9, 10

*In re Oracle Sec. Litig.*
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............................. 14

*In re Sumitomo Cooper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................................... 7

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ............................ 7

*Knight v. Red Door Salons, Inc.*
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................. 9, 10

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................... 5, 6

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ...................................................................... 13

*National Rural Telecom. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 10

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009) .............................................. 6

*Officers for Justice v. Civil Serv. Comm'n.*,
   688 F.2d 615 (9th Cir. 1982). ................................................................... 5, 10

*Roberti v. OSI Sys., Inc.*
   No. CV1309174MWFMRW, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ..................... 6, 11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................... 6, 13

*Viscaino v. U.S. District Court*,
   173 F.3d 713 (9th Cir. 1999) ....................................................................... 10

**Other Authority**

*Manual for Complex Litigation* (Third) § 30.42 (1995) ............................... 11

**Rules**

Fed. R. Civ. P. 23(c)(1) ................................................................................. 10

Fed. R. Civ. P. 23(e) ................................................................................. 5, 13

v

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation,
Case No. 14-cv-00722-(SI)

## MEMORANDUM OF POINTS AND AUTHORITIES

The proposed Settlement now before the Court for preliminary approval provides for the payment of $7,250,000 in cash plus accruing interest for the benefit of the Class (the "Settlement Amount"). The proposed Settlement would resolve all claims and all defenses as to, all parties in this litigation. As discussed in detail below, Class Representatives and Class Counsel submit that the proposed Settlement is in the best interest of the Class and represents a significant recovery. That the Settlement was mediated by a former U.S. District Court Judge, the Hon. Layn Phillips (Ret.) further evidences its fairness. Accordingly, Class Representatives Martin Graham ("Graham") and Shaun Shen ("Shen" and collectively, "Class Representatives") respectfully move for final approval of the proposed Settlement. The Settlement results from Class Representatives' vigorous case prosecution and arm's-length settlement negotiations between the parties.

## I.    OVERVIEW OF THE LITIGATION[1]

This is a federal securities class action against Montage Technology Group Limited ("Montage" or the "Company"), Howard C. Yang ("Yang"), Stephen Tai ("Tai"), and Mark Voll ("Voll") (collectively, "Defendants" and with Class Representatives, the "Parties"). Montage engages in the design, development, and marketing of various analog and mixed-signal semiconductor solutions for the home entertainment and cloud computing markets.

The crux of the claims against Montage is that it failed to disclose related party transactions with LQW.  LQW has been Montage's largest distributor from 2012 onward. In 2012 it accounted for 50% of Montage's revenues, and in the first three quarters of 2013, 71%. First Amended Complaint ("1AC") ¶¶5, 29. From February 2012 onward, LQW was owned by SMMT, which had originally been owned by a Montage subsidiary, and was at the time majority owned by Lei Wu, a Montage officer. 1AC ¶¶42, 50. In July 2012, Montage belatedly attempted to create on-paper distance with SMMT by turning it over to two non-employees. 1AC ¶51.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on July 10, 2017 (Dkt. No. 130-1).

However, Class Representatives allege that Montage maintained control over LQW and SMMT, openly treating SMMT as a subsidiary in China. When listing jobs in 2014, Montage listed among its subsidiaries SMMT. 1AC ¶55. The two companies shared office space. 1AC ¶¶60-61. Front desk staff confirmed to Plaintiffs' investigators that SMMT is "a part of Montage". *Id.* Montage's former employees confirmed that SMMT and LQW were Montage affiliates. 1AC ¶¶64-66. SMMT and LQW had no independent offices. 1AC ¶¶56-59. Montage, SMMT, and LQW also shared various personnel.  ¶1AC ¶47-62.

On September 25, 2013, the SEC declared effective the Form S-1 (the "2013 Registration Statement") Montage filed in connection with the Company's initial public offering ("IPO"). 1AC ¶21. The 2013 Registration Statement represented that 82% of net revenues came through "independent distributors." 1AC ¶23. LQW accounted for 50% of revenue in 2012, and 67% for the first half of 2013. 1AC ¶24. All of Montage's revenue growth for 2012 was due to LQW. 1AC ¶26. Revenues from all other sources declined in 2012 by 22.3%. *Id.* The 2013 Registration Statement was materially false and misleading because it failed to disclose that LQW was a related party under U.S. GAAP. 1AC ¶28. On November 12, 2013 the Company filed with the SEC Form 10-Q for the third quarter of 2013. ¶29. The 10-Q stated that LQW accounted for 71% of the Company's total revenue for the nine months ended September 30, 2013. *Id.*  On January 30, 2014, the SEC declared effective the Form S-1 Registration Statement (the "2014 Registration Statement") Montage filed in connection with the Company's secondary offering on January 31, 2014. 1AC  ¶32. The 2014 Registration Statement stated that LQW accounted for 71% of the Company's total revenue for the nine months ended September 30, 2013 million and 50% of the Company's total revenue for 2012. 1AC ¶34. Montage's fraud came to light on February 6, 2014, when Gravity Research revealed that LQW is a related party of Montage. 1AC ¶38. Immediately, the Company's stock price fell $3.76/share on February 6 and another $1.73/share on February 7, or approximately 25.5% on extraordinary volume.

On February 7, 2014, Graham filed a putative class action complaint styled as *Martin Graham v. Howard C. Yang, et al.,* No. 14-cv-0794, alleging violations of federal securities laws against Yang, Tai, Voll, Yung Kuei Yu, Cathy Yen, Jung-Kung Yang, Edward Way, Charles G.

2

Sodni, and Montage in the United States District Court for the Southern District of New York (the "*Graham* Action"). Three subsequent actions were then filed: *Janice Kenny v. Montage Technology Group Limited, et al.*, No. 3:14-CV-00722 (N.D. Cal.) (the "*Kenny* Action"); *Maria Cecilia Ghilaroditti v. Montage Technology Group Limited, et al.*, No. 14-cv-1036 (S.D.N.Y.) (the "*Ghilaroditti* Action"); and *Zhao Erdi v. Montage Technology Group Limited, et al.*, No. 3:14-cv-1105 (S.D.N.Y)(the "*Erdi* Action").

On April 8, 2014, the lead plaintiff movants filed their motions for appointment of lead plaintiff and approval of their selection of lead counsel. On May 13, 2014, a Corrected Stipulation and Proposed Consolidation Order for Securities Fraud Class Actions, signed by counsel in the *Graham*, *Kenny*, *Ghilaroditti,* and *Erdi* Actions, as well as defense counsel, was filed before Judge Susan Illston. On the same day, Judge Illston so ordered the stipulation and consolidated the *Graham*, *Kenny*, *Ghilaroditti,* and *Erdi* Actions as *In re Montage Technology Group Limited Securities Litigation,* No. 14-cv-0722.

On May 23, 2014, the Court entered an order appointing Graham as Lead Plaintiff and approving The Rosen Law Firm, P.A., as selection of Lead Counsel. On July 22, 2014, Lead Plaintiff Graham and named plaintiff Shen filed the operative Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws against Montage, Yang, Tai, and Voll (the "Complaint"). Defendants moved to dismiss the Complaint on September 22, 2014 and the motion to dismiss was fully briefed on December 22, 2014.

On January 29, 2015, the Court denied Defendants' motion to dismiss. Upon the order denying Defendants' motion to dismiss, the Parties commenced discovery including depositions, documents requests, and interrogatories. On April 10, 2015, Defendants filed their Amended Answer to the Complaint.

On October 9, 2015, Lead Plaintiff Graham and Named Plaintiff Shen moved for class certification with the motion fully briefed on February 19, 2016. The Court granted class certification on April 21, 2016, certifying the action as a class action on behalf of those who purchased or otherwise acquired the publically traded common stock of Montage between September 25, 2013 and February 6, 2014, both dates inclusive, and did not sell such securities

3

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation, Case No. 14-cv-00722-(SI)

1    prior to February 6, 2014 and approving Graham and Shen as Class Representatives and The

2    Rosen Law Firm, P.A. as Class Counsel.

3        **A.      The Settlement Negotiations**

4            On November 13, 2014, prior to the decision on the motion to dismiss, the Parties attended

5    an all-day mediation session with David Geronemus, Esq. of JAMS. The mediation was

6    unsuccessful so the Parties continued litigating, engaging in extensive discovery and briefing the

7    motion for class certification. Eventually, after two years of discovery, the Parties engaged in a

8    court-ordered mediation on March 22, 2017, this time with U.S. District Court Judge, Layn

9    Phillips (Ret.). This mediation was successful and a settlement was reached in principle. On

10   March 29, 2017, the Parties notified the Court that that a settlement had been reached. The terms

11   of the Settlement were memorialized in the Stipulation filed concurrently with the Court.

12           Class Representatives believe that the claims asserted in the litigation are very strong and

13   that their investigation and discovery to this point has unearthed, and will continue to unearth,

14   sufficient evidence to demonstrate that Defendants are liable. Nevertheless, the expense and

15   length of continued proceedings necessary to prosecute the litigation through trial and appeals

16   would likely diminish, if not exhaust, monies presently available to resolve claims against

17   Defendants. Their substantial risk in proving the case at trial, as well as risk in collecting any

18   judgment. The Settlement represents a significant portion of recoverable damages, well within

19   the range deemed reasonable by Courts. The "value" of the Settlement to the Class exceeds that

20   percentage given the significant cost savings presented by the additional discovery benefits.

21       **B.      Preliminary Approval and Notice**

22           On August 25, 2017, the Court preliminarily approved the Settlement permitting the

23   notice process to begin. To date, 11,517 claim packets, including the detailed "Notice of Pendency

24   and Settlement of Class Action," ('the "Notice") and "Proof of Claim and Release" have been

25   sent by first-class mail to potential Settlement Class Members, and  Summary Notice has been

26   timely published on *GlobeNewswire and PR Newswire* on September 20, 2017. Declaration of

27   Josephine Bravata Concerning the Mailing of the Notice of Pendency and Proposed Settlement

28   of Class Action and Proof of Claim and Release ("Bravata Decl.") at ¶¶6, 9, attached as Exhibit

4

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation,
Case No. 14-cv-00722-(SI)

1 to the Declaration Laurence M. Rosen in Support of the Motions for (1) Final Approval of the Class Action Settlement and Plan of Allocation and (2) Approval of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Rosen Declaration" or "Rosen Decl."). The deadline to object to any aspect of the Settlement and to submit requests for exclusion is November 27, 2017. To date, there have been no objections and no requests for exclusion submitted. Bravata Decl., ¶¶11-12.

## II.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

### A.   Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Thus, in assessing the Settlement under Rule 23(e), the Court must only intrude upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit to the extent necessary to reach a reasoned judgment that (a) the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that (b) the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the trial judge] is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 628 (9th Cir. 1982). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by

5

the negotiators." *Id.* at 625. Rather, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (*quoting Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)).

As explained below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and then only after protracted arms-length negotiations. Under these circumstances, the Settlement has the presumption of fairness.

**B.    All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the Proposed Settlement**

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the risk of maintaining class status through trial; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242. These factors all support approval of the proposed Settlement.

**1.    Strength of Class Representatives' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation**

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. See, e.g., *Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). It is well known that class action litigation is inherently complex. *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Courts recognize that securities class actions, in particular, are typically complex and expensive to prosecute. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005). This securities action is no exception. Class Counsel, who has a great deal of experience

6

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation, Case No. 14-cv-00722-(SI)

in litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Class Representatives entered into the Settlement. Indeed, as described herein and in the Rosen Declaration, Class Representatives and their counsel conducted a thorough investigation of the claims in this Action.

While Class Representatives believe that the case is strong based all the evaluation of the information known due to the work performed in the action thus far, they must be cognizant of the substantial risk posed to the Class in continuing this Action, *to wit*, that the Action might succumb at the summary judgment or trial stage to attacks regarding liability or damages or that they will not be able to prove their claims at trial. *See Heritage Bond*, 2005 WL 1594403, at *7 ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); see also *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class' ultimate recovery be less than the proposed settlement). *See also* Rosen Decl. ¶¶42-45. Further, if the action proceeded to trial, Class Representatives would have to prove damages. Damages would be subject to the proverbial "battle of the experts" in which "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Though Class Representatives and Class Counsel were confident that their claims were meritorious, Class Representatives nonetheless faced substantial risks in pursuing this action. First, because Montage's operations were principally conducted in the PRC, Class Representatives faced substantial challenges in obtaining admissible evidence.  The taking of depositions is forbidden within the territory of the PRC.[2] Therefore, any party depositions would

---

[2] China does not permit attorneys to take depositions in China for use in foreign courts." U.S. State Department, International Judicial Assistance: Country Information—Taking Voluntary Depositions of Willing Witnesses (available at: http://travel.state.gov/content/travel/english/legal-considerations/judicial/country/china.html)

have been required to have been taken in Hong Kong.  In addition, because of China's ban on depositions, China would also not have issued letters rogatory to allow compulsory taking of third party depositions. As a result, it would have been impossible to compel the deposition of any non-employee or former employee. In the context of this case in particular, such a challenge was of particular concern because of the nature of the allegations which concerned the fact that Montage engaged in related party transactions with entities that were, during the class period, secretly under the control of Montage. However, Class Counsel has no basis to believe that Montage still controls those entities. Therefore, Class Representatives could not have compelled depositions of their officers or employees, and could not have obtained documents in discovery from those entities.

Class Representatives also faced substantial risks in this action due to the fact that it turned on technical accounting questions. A "related party transaction" is a technical accounting term under U.S. and Chinese GAAP, and Class Representatives would have been required to retain both American and Chinese accounting experts to establish that Montage had engaged in such transactions. Defendants doubtless would have retained their own experts, and challenged such a contention. Thus, the issue of falsity would likely have become a battle of the experts.

Class Representatives also faced risks in proving loss causation. Class Representatives are aware that Defendants intended to argue, as they had in earlier phases in the case, that the decline in Montage's stock was due not to the revelation of related party transactions, but to allegations that Montage was fabricating revenue. While the Court rejected this argument at the pleading and class certification stages, Defendants certainly would have advanced it again at trial, and there is no guarantee that the jury would not have accepted it.

In addition to the risks inherent in this case due to Montage's location in the PRC, Class Counsel was also aware that this case would have been expensive to take to trial.  As mentioned above, depositions in this case would be required to be taken in Hong Kong.  Many depositions would have required the services of an interpreter, and the use of exhibits at deposition and trial would have required certified translations.  Class Counsel would also have been required to rely upon the services of experts in market efficiency, accounting, and damages, all of which would

1  have required the expenditure of substantial additional costs in proceeding.

2  Class Counsel also believes that the amount of the proposed Settlement is fair, adequate,

3  and reasonable, given the possible risk that, even if the Class were to prevail at trial and on any

4  subsequent appeals, funds sufficient to cover any judgment may be non-existent. Plaintiffs had

5  no guarantee that Defendants' insurers would not deny coverage if this case had not settled, and

6  Plaintiffs would have faced substantial hurdles in attempting to enforce a judgment in the PRC as

7  it does not recognize U.S. judgments.[3] Difficulties in this regard would have been exacerbated

8  considerably in this case because Montage is now state-owned. The proposed Settlement would

9  provide an assured all-cash benefit to Class members in the near future. *See In re Mego Fin. Corp.*

10 *Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming approval of settlement because

11 "[c]omplex litigation is inherently uncertain and Plaintiffs would have had much difficulty

12 proving scienter"); *see also Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 WL 248367,

13 at *3 (N.D. Cal. Feb. 2, 2009) (acknowledging that the settlement agreement offered an immediate

14 and certain award for the Class was a superior alternative to continued litigation in light of the

15 uncertain risks associated with plaintiffs' claims).

16 ## 2.      The Amount Offered in the Settlement

17 The $7,250,000 proposed Settlement represents a substantial percentage of Defendants'

18 culpability. Plaintiffs damages consultant estimated that the maximum recoverable damages in

19 this action are $29,716,477 (assuming all Class members file claims). The gross recovery

20 therefore represents 24.39% of that figure, which is well above the median percentage of investor

21 losses recovered recovery level in securities class action settlements. *See In re Omnivision Techs.,*

22 *Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum

23

24

25 [3] *See* Dan Harris, Chart on Enforcing Judgments Around the World, Including China, China Law
26 Blog (June 22, 2013) ("When it comes to enforcing US court judgments in China, the law has been clear and remains clear. China won't do it. Not now. Not later. Maybe not ever.") (available
27 at:       http://www.chinalawblog.com/2013/06/chart-on-enforcing-judgments-around-the-world-including-china.html); Jason Hsu, *Judgment Unenforceability in China*, 19 Fordham J. Corp. &
28 Fin. L. 201 (2013).

damages) (citing *In re Heritage Bond Litig.*, No. 02ML1475, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)). *See also Ofcrs. for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). Moreover, in 2016, Cornerstone Research calculated that the median settlement as a percentage of estimated damages for settlements of cases with estimated damages under $50 million was 7.3%. Securities Class Action Settlements: 2016 Review and Analysis at 8 (Cornerstone Research, 2017)[4]. The 24.39% recovery of damages this Settlement recovers it higher than most settlements approved by courts within the Ninth Circuit.

### 3.    Risk of Maintaining a Class Action

The Court's certification order is conditional. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g., Viscaino v. U.S. District Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Because maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See Heritage*, 2005 WL 1594403, at *6 ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results") (*citing National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation omitted)).

---

[4] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12- 2016-Review.pdf. Last viewed on Novembe 15, 2017.

1

### 4.        Stage of the Proceedings

2        Class Representatives had sufficient information to evaluate their case and to assess the

3   propriety of a settlement. Here, The Settlement was reached only after Class Counsel: (a)

4   conducted an extensive factual investigation, which included the review in the People's Republic

5   of China ("PRC") of publicly available documents about Montage and certain individual

6   Defendants and related PRC accounting and legal issues including consulting with a PRC

7   securities law expert; (b) researched, drafted and filed the initial complaint and the operative

8   Consolidated Amended Class Action Complaint (the "Complaint") (Dkt. No. 38); (c) identified

9   certain witnesses and developed leads to obtain evidence; (d) consulted with private investigators

10   in the PRC relating to the allegations in this action; (e) consulted with a damages expert and an

11   accounting expert; (f) researched and drafted oppositions to Defendants' motion to dismiss and

12   motion to transfer; (g) prepared and responded to discovery requests including document

13   productions, interrogatories, and serving third party subpoenas; (h) reviewed hundreds of

14   thousand documents produced by Defendants; (i) traveled to China for a week to review

15   documents subject to PRC secrecy laws; (j) defended Class Representatives' depositions; (k)

16   successfully moved for class certification; (l) defended market efficiency expert's deposition and

17   deposed Defendants' market efficiency expert; (m) responded to Defendants' motion to exclude

18   Class Representatives' market efficiency expert; (n) engaged in settlement negotiations with the

19   Defendants including preparing for two mediation sessions after the drafting of mediation

20   statements and presentations; (o) negotiated and drafted the terms of all relevant settlement

21   documents including the Stipulation, Preliminary Approval Order, and the notice documents; and

22   (p) presented the terms of the settlement to the Court by way of a motion for preliminary approval

23   of the proposed settlement.   Rosen Decl. ¶6. Class Representatives and Class Counsel were in an

24   excellent position to evaluate the strengths and weaknesses of their allegations against Defendant,

25   and the defenses raised thereto, as well as the substantial risks of continued litigation, and to be

26   in a position to conclude that the Settlement provides a fair, adequate, and reasonable recovery,

27   and that it is in the best interests of the Class. *Roberti v. OSI Sys., Inc.*, No.

28   CV1309174MWFMRW, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) (similar stage of

proceedings weighs in favor of final approval).

### 5. Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981); accord *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *6 (C.D. Cal. Nov. 18, 2014). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage*, 2005 WL 1594403, at *9 (citing *Manual for Complex Litigation* (Third) § 30.42 (1995) (internal quotations omitted). This case has been litigated by experienced and well-respected counsel on both sides. Settling Defendants' counsel, O'Melveny & Myers LLP, a highly-respected law firm that is widely recognized as having one of the nation's preeminent securities litigation practices. Rosen Decl. ¶72. Class Counsel is intimately familiar with the strengths and weaknesses of the case and the core facts, and wholeheartedly recommends this Settlement as fair, reasonable, and adequate.

Moreover, the Settlement is also procedurally fair because it is the product of multiple arm's-length negotiations among counsel facilitated by David Geronemus, Esq. of JAMS and Hon. Layn Phillips (Ret.), a former federal judge who is widely recognized as one of the foremost class action securities fraud mediators in the country. Counsel participated in two full-day mediation sessions – one with Mr. Geronemus and one with Judge Phillips. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

Class Counsel recommends that the Court approve the Settlement because it is fair, reasonable, and adequate, and in the best interests of the Class. Rosen Decl. ¶56.

### 6. The Reaction of the Class Members to the Settlement

Pursuant to the Order Granting Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 137), 11,517 Notices were sent to Class Members to date and Summary Notice

12

Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation, Case No. 14-cv-00722-(SI)

was published in *GlobeNewswire and PR Newswire.* Bravata Decl. ¶9. The deadline to object or exclude oneself from the settlement is November 27, 2017. *Id.* ¶¶11-12. To date, no objections have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement and no requests for exclusions have been received. *Id.* "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness" *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.

In short, the pertinent factors courts consider all weigh in favor of the final approval of the Settlement. According, the Court should finally approval the Settlement as fair, reasonable, and adequate.

## III.     The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374-75. Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11.53 at 167.

### A.     The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006)  (citing *Franks v. Kroger Co.*, 649

13

F.2d 1216, 1222-23 (6th Cir. 1981)).  Here the notice was disseminated via individual mailing of over 11,517 printed notices, published over national business internet newswires, and posted to the Claims Administrator's website. Bravata Decl., ¶¶5, 6, 9.  This notice easily satisfies the due process requirement.

**B.      The Contents of the Notice Satisfy Due Process**

The Ninth Circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) and explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178.

Here, the Court-approved Notice provided all of the required information: a description of the $7,250,000 Settlement Fund and Plan of Allocation of that Settlement Fund; Plaintiffs' Counsel's intent to apply for a fee award in an amount not to exceed one-third (33 1/3%) of the Gross Settlement Fund for settlement of the class claims and an amount not to exceed $700,000 for reimbursement of expenses; the request for a compensation award to Class Representatives in the amount of $20,000 in total; and the contact information for Class Counsel and the Claims Administrator, including how to make inquiries to both. The notice also included the date, time, and place of the Settlement Hearing, described how to object, and informed class members that any objection must be received by the Court and counsel for the Parties no later than November 27, 2017. Furthermore, the Court-approved notice adequately informed class members of the impact of the settlement, including release of claims against Defendants for any class members who do not opt out.

In sum, broad dissemination of the Court-approved notice satisfied every conceivable requirement of due process. Accordingly, the settlement should be granted final approval.

**IV.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11. "When formulated by competent and

14

experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). "To warrant approval, the plan of allocation must also meet the standards by which the partial settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable… It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> [A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.

The proposed Plan of Allocation herein was fully described in the Notice sent to the Class, at pages 4-7. Bravata Decl., Ex. A. It was formulated by Class Counsel, in consultation with an independent damages expert, with the goal of reimbursing Class members in a fair and reasonable manner. The plan of allocation comports with the Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005) by allocating the same dollar per share amount to each Class member, subject to the PSLRA's 90-day lookback provision, for each share purchased during the Class Period and held as of the corrective disclosure on February 6, 2014. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $7,250,000 plus interest, less attorneys' fees and expenses). The Plan of Allocation does not discriminate between Class Members.

Thus, the Plan of Allocation has a rational basis and fairly compensates Class Members, and this Court should approve it.

**V.      CONCLUSION**

For all of the foregoing reasons, Class Representatives respectfully request that the Court finally approve the proposed class action settlement.

15

Dated: November 15, 2017           Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

Jonathan Stern, Esq. (*pro hac vice*)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jstern@rosenlegal.com

*Class Counsel for Class*
*Representatives and the Class*

16