THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

*Class Counsel for Class Representatives and the Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MONTAGE TECHNOLOGY GROUP LIMITED SECURITIES LITIGATION | Master File No 14-cv-0722 (SI) <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

## DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO CLASS REPRESENTATIVES

I, Laurence M. Rosen, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:[1]

1.   I am Class Counsel for Class Representatives Martin Graham ("Graham") and Shaun Shen ("Shen" and with Graham, "Class Representatives"), in the above-referenced action. I am duly admitted to practice in California and before this Court. I have personal

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on July 10, 2017 (Dkt. No. 130-1).

knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2. I submit this Declaration in support of Class Representatives' Motions For (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) Approval of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives.

3. The purpose of this Declaration is to set forth the nature of the investigation, litigation, and negotiations that led to the Settlement with defendants Montage Technology Group Limited ("Montage" or the "Company"), Howard C. Yang ("Yang"), Stephen Tai ("Tai"), and Mark Voll ("Voll") (collectively, the "Defendants" and with Class Representatives, the "Parties"). In my view, this Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court as well as why Class Counsel's fee and expense request and Award to Class Representatives are reasonable and should be approved by the Court.

4. The Settlement provides for Defendants to pay a total of $7,250,000 (Seven Million Two Hundred and Fifty Thousand Dollars) to resolve Settlement Class Members' claims.

5. On August 25, 2017, the Court signed the Order Preliminarily Approving Settlement and Providing Notice. (The "Preliminary Approval Order") (Dkt. No. 137).

**I.    SUMMARY**

6. Beginning from Class Counsel's pre-filing investigation of the action in February 2014 and continuing throughout, Class Representatives and their counsel have litigated this action vigorously. The Settlement was reached only after Class Counsel: (a) conducted an extensive factual investigation, which included the review in the People's Republic of China ("PRC") of publicly available documents about Montage and certain individual Defendants and related PRC accounting and legal issues including consulting with a PRC securities law expert; (b) researched, drafted and filed the initial complaint and the operative Consolidated Amended Class Action Complaint (the "Complaint") (Dkt. No. 38); (c) identified certain witnesses and developed leads to obtain evidence; (d) consulted with private investigators in the PRC relating

to the allegations in this action; (e) consulted with a damages expert and an accounting expert; (f) researched and drafted oppositions to Defendants' motion to dismiss and motion to transfer; (g) prepared and responded to discovery requests including document productions, interrogatories, and serving third party subpoenas; (h) reviewed hundreds of thousand documents produced by Defendants; (i) traveled to China for a week to review documents subject to PRC secrecy laws; (j) defended Class Representatives' depositions; (k) successfully moved for class certification; (l) defended market efficiency expert's deposition and deposed Defendants' market efficiency expert; (m) responded to Defendants' motion to exclude Class Representatives' market efficiency expert; (n) engaged in settlement negotiations with the Defendants including preparing for two mediation sessions after the drafting of mediation statements and presentations; (o) negotiated and drafted the terms of all relevant settlement documents including the Stipulation, Preliminary Approval Order, and the notice documents; and (p) presented the terms of the settlement to the Court by way of a motion for preliminary approval of the proposed settlement.

7. By the time the Parties reached the Settlement, Class Representatives and Class Counsel had gained a full understanding of the strengths and weaknesses of the case.

8. Even though the Notice of Pendency and Settlement of Class Action ("Notice") of was sent to 11,517 potential Class Members, the Claims Administrator mailed and e-mailed 1,454 letters to Nominee Account Holders and Institutional Groups, the Notice was posted on the Claims Administrator's website, and Summary Notice was duly disseminated electronically over *GlobeNewswire* as well on *PR Newswire,* no class members have objected to or requested exclusion from the Settlement. *See* Declaration of Josephine Bravata Concerning the Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release, attached hereto as Exhibit 1 ("Bravata Decl.") at ¶¶5-6, 9, 11-12.

9. The Settlement was reached after intense, concentrated, and good faith negotiations among experienced counsel with the aid of nationally regarded mediators. The first mediation, prior to a decision on the motion to dismiss and prior to the class certification motion, took place with David Geronemus, Esq. of JAMS. That mediation was unsuccessful so

the Parties continued litigation following class certification, delving deep into discovery and fully evaluating the evidence. Following extensive discovery, the parties attended a second mediation with Hon. Layn Phillips (Ret.) of Phillips ADR. This second mediation was successful. The parties then engaged in vigorous negotiation and drafting of the Stipulation of Settlement and supporting documents. All in all, the litigation was very time intensive, difficult, fraught with risk and hard fought at every stage.

10. The Settlement confers an immediate and substantial benefit on the Class. At the same time, the certainty of the settlement eliminates the very serious risk that continued litigation might yield nothing for Class Representatives and the Class.

11. The $7,250,000 settlement represents a significant percentage of Class Representatives' maximum class-wide damages. Class Counsel's damages consultant estimated the aggregate maximum class-wide damages to be $29,716,477. This Settlement yields a 24.39% gross recovery for Settlement Class Members.

12. The Plan of Allocation is fair, reasonable and adequate as it was formulated with the aid of a consultant and distributes the Settlement Fund *pro-rata* to class members pursuant to the principles of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Only those shareholders who purchased during the Class Period and continued to hold after the February 6, 2014 corrective disclosure are compensated. Shareholders are allocated a recognized per share loss of the stock drop based on the amount of such drop. Net gains made from trades during the Class Period are netted out with net losses. Thus, each shareholder is treated fairly and compensated *pro-rata* based on the compensable loss caused by the alleged misconduct.

13. Counsel requests attorneys' fees of one-third of the Gross Settlement Fund or $2,416,666. The requested fee is reasonable and within the range of those awarded in class litigation of this type. The requested fee is fair in light of the results achieved, the risks involved in the litigation, and similar awards in this type of litigation. Indeed, when cross-checked with the lodestar method, the reasonableness of the fee request is confirmed by counsel's lodestar multiplier of 1.79 which is at the low end of the range of multipliers typically awarded in contingent fee class action cases.

3

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)

14. Class Counsel's request for reimbursement of case-related expenses of $433,719.65 is also reasonable, fair and should be approved. These expenses were required and necessary to further the prosecution of this action. *See* Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), attached hereto as Exhibit 2 at ¶8.

15. The action was previously certified as a class action. The action continues to meets each of the requirements necessary to certify the Class under Fed. R. Civ. P. 23(a) and 23(b)(3). Accordingly, the Court should, maintain class certification.

## II.   BACKGROUND OF THE LITIGATION

16. Defendant Montage is a provider of analog and mixed-signal semiconductor solutions to home entertainment and cloud computing markets. Montage's business is mostly conducted in the PRC, Hong Kong, Taiwan, and the United States through its wholly owned subsidiaries. During the Class Period, Montage shares were listed on NASDAQ under the ticker symbol "MONT."

17. Defendant Yang, a founder of Montage, was the Company's Chairman of the Board and Chief Executive Officer during the Settlement Class Period.

18. Defendant Tai, a founder of Montage, was the Company's President and a member of the Board of Directors during the Settlement Class Period.

19. Defendant Voll was Montage's Chief Financial Officer during the Settlement Class Period.

20. Yang, Tai, and Voll are referred to herein as the "Individual Defendants."

**Overview of Class Representatives' Claims**

21. Class Representatives allege claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

22. The crux of the claims against Montage is that it failed to disclose related party transactions with LQW.  LQW has been Montage's largest distributor from 2012 onward. In 2012 it accounted for 50% of Montage's revenues, and in the first three quarters of 2013, 71%. First Amended Complaint ("1AC") ¶¶5, 29. From February 2012 onward, LQW was

4

owned by SMMT, which had originally been owned by a Montage subsidiary, and was at the time majority owned by Lei Wu, a Montage officer. 1AC ¶¶42, 50. In July 2012, Montage belatedly attempted to create on-paper distance with SMMT by turning it over to two non-employees. 1AC ¶51.

23. However, Class Representatives allege that Montage maintained control over LQW and SMMT, openly treating SMMT as a subsidiary in China. When listing jobs in 2014, Montage listed among its subsidiaries SMMT. 1AC ¶55. The two companies shared office space. 1AC ¶¶60-61. Front desk staff confirmed to Plaintiffs' investigators that SMMT is "a part of Montage". *Id.* Montage's former employees confirmed that SMMT and LQW were Montage affiliates. 1AC ¶¶64-66. SMMT and LQW had no independent offices. 1AC ¶¶56-59. Montage, SMMT, and LQW also shared various personnel. ¶1AC ¶47-62.

24. On September 25, 2013, the SEC declared effective the Form S-1 (the "2013 Registration Statement") Montage filed in connection with the Company's initial public offering ("IPO"). 1AC ¶21. The 2013 Registration Statement represented that 82% of net revenues came through "independent distributors." 1AC ¶23. LQW accounted for 50% of revenue in 2012, and 67% for the first half of 2013. 1AC ¶24. All of Montage's revenue growth for 2012 was due to LQW. 1AC ¶26. Revenues from all other sources declined in 2012 by 22.3%. *Id.* The 2013 Registration Statement was materially false and misleading because it failed to disclose that LQW was a related party under U.S. GAAP. 1AC ¶28. On November 12, 2013 the Company filed with the SEC Form 10-Q for the third quarter of 2013. ¶29. The 10-Q stated that LQW accounted for 71% of the Company's total revenue for the nine months ended September 30, 2013. *Id.* On January 30, 2014, the SEC declared effective the Form S-1 Registration Statement (the "2014 Registration Statement") Montage filed in connection with the Company's secondary offering on January 31, 2014. 1AC ¶32. The 2014 Registration Statement stated that LQW accounted for 71% of the Company's total revenue for the nine months ended September 30, 2013 million and 50% of the Company's total revenue for 2012. 1AC ¶34. Montage's fraud came to light on February 6, 2014, when

5

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)

Gravity Research revealed that LQW is a related party of Montage. 1AC ¶38. Immediately, the Company's stock price fell $3.76/share on February 6 and another $1.73/share on February 7, or approximately 25.5% on extraordinary volume.

**Relevant Background and Procedural History**

25. On February 7, 2014, Graham filed a putative class action complaint styled as *Martin Graham v. Howard C. Yang, et al.,* No. 14-cv-0794, alleging violations of federal securities laws against Yang, Tai, Voll, Yung Kuei Yu, Cathy Yen, Jung-Kung Yang, Edward Way, Charles G. Sodni, and Montage in the United States District Court for the Southern District of New York (the "*Martin* Action")(Dkt. No. 1). Three subsequent actions were then filed: *Janice Kenny v. Montage Technology Group Limited, et al.*, No. 3:14-CV-00722 (N.D. Cal.) (the "*Kenny* Action"); *Maria Cecilia Ghilaroditti v. Montage Technology Group Limited, et al.*, No. 14-cv-1036 (S.D.N.Y.) (the "*Ghilaroditti* Action"); and *Zhao Erdi v. Montage Technology Group Limited, et al.*, No. 3:14-cv-1105 (S.D.N.Y)(the "*Erdi* Action").

26. On April 8, 2014, the lead plaintiff movants filed their motions for appointment of lead plaintiff and approval of their selection of lead counsel. On May 13, 2014, a Corrected Stipulation and Proposed Consolidation Order For Securities Fraud Class Actions, signed by counsel in the *Graham*, *Kenny*, *Ghilaroditti,* and *Erdi* Actions, as well as defense counsel, was filed before Judge Susan Illston. On the same day, Judge Illston so ordered the stipulation and consolidated the *Graham*, *Kenny*, *Ghilaroditti,* and *Erdi* Actions as *In re Montage Technology Group Limited Securities Litigation,* No. 14-cv-0722 (Dkt. Nos. 31, 32).

27. On May 23, 2014, the Court entered an order appointing Graham as Lead Plaintiff and approving The Rosen Law Firm, P.A., as Lead Counsel. (Dkt. No. 36).

28. On July 22, 2014, Lead Plaintiff Graham and named plaintiff Shen filed the operative Complaint the Federal Securities Laws against Montage, Yang, Tai, and Voll (Dkt. No. 38).

29. Defendants moved to dismiss the Complaint on September 22, 2014 (Dkt. No. 42). The motion to dismiss was fully briefed on December 22, 2014 (Dkt. No. 57).

30. On November 13, 2014, the Parties attended an all-day mediation session with David Geronemus, Esq. of JAMS. The mediation was unsuccessful and the Parties carried on with discovery.

31. On January 29, 2015, the Court denied Defendants' motion to dismiss (Dkt. No. 62). Upon the order denying Defendants' motion to dismiss, the Parties commenced discovery including depositions, documents requests, and interrogatories.

32. On February 12, 2015, Defendants filed their Answer to Plaintiffs' Complaint (Dkt. No. 63), and on April 10, 2015, Defendants filed their Amended Answer to Plaintiffs' Complaint (Dkt. No. 70).

33. On October 9, 2015, Class Representatives filed a Motion to Certify Class (Dkt. Nos. 75–78). The Motion to Certify Class was fully briefed on February 19, 2016 (Dkt.No. 93).

34. In conjunction with the class certification briefing, Defendants filed a Motion to Exclude Expert Report of Howard J. Mulcahey (Dkt. No. 83). Defendants' Motion to Exclude was fully briefed on February 19, 2016 (Dkt. No. 92).

35. On March 8, 2016, the Court held oral argument on the Motion to Certify Class and the Motion to Exclude (Dkt. No. 97).

36. On April 21, 2016, the Court granted in part and denied in part Defendants' Motion to Exclude and granted Class Representatives' Motion to Certify Class, certifying the Action as a class action on behalf of those who purchased or otherwise acquired the publicly traded common stock of Montage between September 25, 2013 and February 6, 2014, inclusive and did not sell such securities prior to February 6, 2014 and approving Graham and Shen as Class Representatives as The Rosen Law Firm, P.A. as Class Counsel (Dkt. No. 100).

37. From February 2015 through March 2017, Plaintiffs engaged substantial discovery, including spending more than 1,100 hours reviewing documents, including spending a week in PRC reviewing documents subject to PRC secrecy laws.

38. After preparing lengthy mediation statements, on March 22, 2017, the Parties participated in an all-day mediation session with Hon. Layn R. Phillips (Ret.). The mediation was successful and a settlement was reached in principle.

39. On March 29, 2017, the Settling Parties notified the Court that they reached an agreement in principle and were still finalizing the terms and documentation. (Dkt. No. 123).

40. On July 10, 2017, Class Representatives filed the Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 130).

41. On August 25, 2017, the Court held a hearing for the preliminary approval motion. The Court entered the Preliminary Approval Order that same day (Dkt. No. 137).

## III. CONTINUED LITIGATION POSED CONSIDERABLE AND SERIOUS RISKS TO THE CLASS

### Risks of Proving Liability & Damages

42. Though Class Representatives and Class Counsel were confident that their claims were meritorious, Class Representatives nonetheless faced substantial risks in pursuing this action. First, because Montage's operations were principally conducted in the PRC, Class Representatives faced substantial challenges in obtaining admissible evidence. The taking of depositions is forbidden within the territory of the PRC. Therefore, any party depositions would have been required to have been taken in Hong Kong. In addition, because of China's ban on depositions, China would also not have issued letters rogatory to allow compulsory taking of third party depositions. As a result, it would have been impossible to compel the deposition of any non-party or former employee. In the context of this case in particular, such a challenge was of particular concern because of the nature of the allegations. The allegations in this case principally concern the fact that Montage engaged in related party transactions with non-parties that were, during the Class Period, secretly under the control of Montage. However, Class Counsel has no basis to believe that Montage still controls those entities. Therefore, Class Representatives could not have compelled depositions of their officers or employees, and could not have obtained documents in discovery from those entities.

43. Class Representatives also faced substantial risks in this action due to the fact that it turned on technical accounting questions. A "related party transaction" is a technical accounting term under U.S. and Chinese GAAP, and Class Representatives would have been

8

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)

required to retain both American and Chinese accounting experts to establish that Montage had engaged in such transactions. Defendants doubtless would have retained their own experts, and challenged such a contention. Thus, the issue of falsity would likely have become a battle of the experts.

44. Class Representatives also faced risks in proving loss causation. Class Representatives are aware that Defendants intended to argue, as they had in earlier phases in the case, that the decline in Montage's stock was due not to the revelation of related party transactions, but to allegations that Montage was fabricating revenue. While the Court rejected this argument at the pleading and class certification stages, Defendants certainly would have advanced it again at trial, and there is no guarantee that the jury would not have accepted it.

45. In addition to risks involved in establishing liability and damages, there would have been substantial risk in attempting to enforce any judgment. Plaintiffs had no guarantee that Defendants' insurers would not deny coverage if this case had not settled, and Plaintiffs would have faced substantial hurdles in attempting to enforce a judgment in the PRC, because the PRC does not recognize US judgments. Difficulties in this regard would have been exacerbated considerably in this case because Montage is now state-owned.

**Complexity, Expense, and Likely Duration of the Litigation**

46. The resolution of this action required the assessment of many complex issues of fact and law. As demonstrated above, numerous factual and legal questions exist as to liability and damages that would be subject to lengthy and expensive expert discovery, with no assurance that a jury would credit Class Representatives' experts over that of Defendants' expert.

47. The further litigation of this action would require the parties to extensively explore, through expensive and time consuming expert discovery, issues relating to PRC law, the legal and professional opinions relied upon by the Individual Defendants, loss causation, and damages.

48.     The cost of conducting discovery is substantially higher than in the typical case because almost all of the relevant documents were created in and located in the PRC.  This required document review by Chinese speaking lawyers, as well as translation into English.  In addition, Lead Counsel traveled to PRC for a week to conduct document review of documents subject to PRC secrecy laws, further increasing costs.  Even party depositions present additional difficulties since they must be conducted outside of the PRC, typically in Hong Kong. The cost of travel, interpreters, videographers, and the like for the party depositions in Hong Kong would be extremely high.

49.     Class Representatives and Class Counsel have aggressively litigated this action for three and a half years. Given the complexity of the factual and legal issues in this case, the expense to be incurred through further pursuit of this action against Defendants would be substantial. Class Counsel has already expended considerable resources (2,250.9 and $433,719.65) litigating this action and assessing the legal strengths and weaknesses thereof. Significant additional time and expenses would be incurred to complete depositions, and expert discovery, summary judgment, and, ultimately, to take this action to trial.

50.     The trial that Class Representatives would face would be lengthy and complicated. On liability alone, the trial would have involved substantial attorney and expert time, voluminous documentary and deposition evidence, vigorously contested motions and the considerable use of judicial resources.

51.     Even assuming that the Class could recover a larger judgment after one or more trials, the delay through the trial(s), post-trial motions and the appellate process would likely deny the Class any recovery for years and the continued costs of prosecution would erode any increased recovery. Moreover, if the case were to go to trial, the insurance policy proceeds would continue to decrease.

**Stage of Proceedings**

52.     Lead Counsel has thoroughly litigated the case, having obtained class certification and completed document discovery, reviewing hundreds of thousands of documents. The only work remaining before trial was to take depositions of the Defendants and

oppose any summary judgment motions. Class Counsel has conducted a thorough evaluation of the strengths and weaknesses of the action, the risks of litigation, and the challenges the Class would face at trial.

**Range of Reasonableness/Ability of Defendants to Withstand a Greater Judgment**

53. In this case, Class Representatives' consultant estimated maximum class-wide damages to be $29,716,477. The $7,250,000 settlement therefore represents a recovery of 24.39% of the maximum possible recoverable damages. As noted in the accompanying memoranda, this is an excellent result and above the median settlement value for cases of this size. As such, the $7,250,000 settlement falls well within the range of reasonableness for approval of a settlement in this action.

54. Montage is headquartered and had all operations in the PRC. Most of the Individual Defendants are also located in the PRC, and there is little likelihood of collecting any judgment against them. As a practical matter, Plaintiffs were limited to collecting a judgment against Defendants' insurers. This left open the significant risk that the insurers would disclaim coverage if and when Plaintiffs' proved at trial that Defendants' intentionally violated the securities laws.

55. Settlement at this time avoids those risks and further costly litigation, and provides Class Members with the opportunity to receive an immediate, certain, and substantial recovery. It is, therefore, the opinion of Class Counsel that the risks involved, balanced against the certainty of the substantial benefits obtained by the Settlement, more than justify approval of this Settlement.

56. As set forth above, Class Counsel have conducted extensive investigation into their claims. We have consulted damages and financial experts in connection with the damages alleged by the Class as well as employed private investigators and analyzed the information they marshaled during their investigation and have thoroughly researched the law. Knowing the legal arguments with respect to the claims and the defenses and the risks of continued litigation, Class Counsel has concluded that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

**Reaction of the Class**

57. Pursuant to the Court's Preliminary Approval Order, 11,517 copies of the Notice and Claims Form were mailed to Class Members, available at the Claims Administrator's website on September 14, 2017, and Summary Notice was disseminated electronically over *GlobeNewswire* and *PR Newswire* on September 20, 2017. *See* Ex. 1, Bravata Decl. ¶¶5- 6, 9.

58. No requests for exclusion have been received. The deadline to request to be excluded from the Settlement is November 27, 2017. *See* Ex., 1, Bravata Decl. ¶11.

59. No shareholders have come forward to object to the Settlement. The deadline to object to any aspect of the Settlement is November 27, 2017. *See* Ex., 1, Bravata Decl. ¶12.

## IV. THE NOTICE OF THE SETTLEMENT WAS PROPERLY MADE TO THE CLASS

60. Pursuant to the Preliminary Approval Order, Class Representatives caused 11,517 copies of the Notice and Proof of Claim form to be mailed to potential Class Members, including nominee account holders and institutional groups, regarding the proposed Settlement of this action as described in the Bravata Declaration. *See* Ex. 1, Bravata Decl. ¶6. Additionally, the Notice and Proof of Claim form were published on the Claims Administrator's website and Summary Notice was disseminated electronically on *GlobeNewswire* and *PR Newswire* on September 20, 2017. *Id*. at ¶¶5, 9. The Claims Administrator also mailed or e-mailed 1,454 letters to Nominee Account Holders and Institutional Groups. *Id*. at ¶6.

61. The Court-approved Notice explains the background and terms of the Settlement and provided potential members of the Class with the date of the Settlement Hearing. The Notice provides Class Members with a full and explicit explanation of the Settlement, the Plan of Allocation, the anticipated fee and expense requests and award to Class Representatives and the rights and options of Class Members. *See* Ex. 1, Bravata Decl., Ex. A. The Notice, and the means by which it was sent, comply with the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process, and are similar to those approved in other cases.

62. The Notice also set forth Class Counsel's estimates of the per share recovery to Class members with and without the requested attorneys' fees and reimbursement of expenses

and award to Class Representatives. These calculations were made in consultation with Class Representatives' damages consultant. *See* Ex. 1, Bravata Decl., Ex. A.

## V. THE PLAN OF ALLOCATION SHOULD BE APPROVED AS IT IS FAIR AND REASONABLE

63. The Plan of Allocation was formulated by Class Counsel, in consultations with a well-respected and experienced financial consultant and was designed to ensure distribution of the settlement fund that was fair and consistent with Class Representatives' theory of the case, which asserted that there were declines in the price of Montage's stock reflecting disclosures of the truth relating to the alleged misconduct; and to ensure the allocation comported with the federal securities laws, including principles of loss causation and negative causation.

64. The Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable.

65. Perhaps most importantly, the Plan of Allocation does not discriminate, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Class Representatives).

66. Class Counsel and their financial consultant determined this was the fairest method of allocation of the Net Settlement Fund.

## VI. THE REQUESTED ATTORNEYS' FEES ARE FAIR, REASONABLE AND EXPENSES INCURRED WERE NECESSARY TO LITIGATE THIS ACTION

67. The percentage of recovery method for compensating attorneys in common fund cases is preferred and appropriate. First, it is consistent with applicable Ninth Circuit case law as set forth in the supporting Memorandum of Law in Support of Class Representatives' Unopposed Motion for Approval of Attorneys' Fees and Expenses ("Fee Brief"). Second, it is consistent with practices of the private marketplace where contingency attorneys are

13

customarily compensated on a percentage of the recovery method. Third, it provides Class Counsel with a strong incentive to achieve a maximum possible recovery in a reasonable amount of time. Fourth, use of the percentage method decreases the burden imposed upon the Court by the "lodestar" method and assures that Class Members do not experience undue delay in receiving their share of the settlement.

68. Class Counsel seeks an award of attorneys' fees in the amount of one-third of the Gross Settlement Fund or $2,416,666. This percentage is within the range of fees awarded in this Circuit and other federal courts in cases of this type, as set forth in the supporting Fee Brief.

69. In light of such a favorable Settlement and the reasonableness of the fee requested, it is of no surprise that, as of the date of this writing, not a single person has come forward to object to the requested fee, out of 11,517 Notices that were mailed to potential Class members. *See* Ex. 1, Bravata Dec. ¶¶6, 12.

70. From its inception, Class Counsel has aggressively litigated this action. Class Counsel's experience in securities class action litigation allowed them to identify complex issues involved in this action and to formulate strategies to effectively and efficiently prosecute a litigation of this complexity. Additionally, Class Counsel submits that their reputation as attorneys able and willing to see a meritorious case through trial and appeals assisted in the Settlement negotiations.

71. As discussed above, Class Representatives and their counsel faced significant risks in pursuing this action. In fact, this was not an action where any recovery was assured. Adding to these risks, Class Counsel has received no compensation during the time the action has been pending – over three and half years. Their fees are totally contingent and dependent upon a successful result and an award by this Court. Class Counsel respectfully submits that the outstanding Settlement was primarily the result of their persistence, hard work, and skill.

72. The quality legal services performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. The Defendants were represented by very able counsel. Indeed, Defendants were represented by O'Melveny & Myers LLP, a highly regarded firm with significant experience in complex securities litigation.

O'Melveny & Myers LLP spared no effort in the defense of its clients. In the face of this formidable opposition Class Counsel were nonetheless able to develop a case that was sufficiently strong to settle the Action on terms that were favorable to the Class.

73. The fairness and reasonableness of the requested fee is further demonstrated when "cross-checked" with the lodestar/multiplier analysis.

74. Class Counsel expended a total of 2,250.9 hours of professional time for a total lodestar of $1,314,697. *See* Ex. 2, Rosen Fee Decl. The lodestar multiplier is 1.79 as shown in the following analysis:

<u>Lodestar Multiplier Analysis</u>

| | |
|---|---|
| Settlement Amount | $7,250,000 |
| Requested Percentage | 33.33% |
| Requested fee | $2,416,667 |
| Lodestar | $1,347,967 |
| Multiplier | 1.79 |

75. As set forth in the Fee Brief, a multiplier of 1.79 is in the range typically awarded in the Ninth Circuit and therefore fair and reasonable.

76. Class Counsel incurred $433,685.42 of expenses to prosecute this action.

77. Substantial expense items included mediation fees of $26,489.06, financial damages expert fees of $3,000, market efficiency and class certification fees of $307,556.05, accounting expert fees of $18,800, PRC securities law expert fees of $11,200, travel fees of $28,381.81, translation fees of $6,692.96, document hosting fees of $9,298.75, and investigator fees of $4,876.15. Other larger expenses included service of process fees, computer research fees, and postage and messenger fees. The expenses incurred were necessary to prosecute this action effectively and are reflected in the books and records of Class Counsel. *See* Ex. 2, Rosen Fee Decl.

15

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)

## VIII. REQUESTED AWARD TO CLASS REPRESENTATIVES

78. Class Representatives seek an award in the amount of $20,000 in total, or $10,000 each, as stated in the Notice. Both Class Representatives a devoted considerable amount of time to the prosecution of the action, including preparing for and attending lengthy depositions for class certification. *See* attached hereto as Exhibit 3 is the Declaration of Martin Graham in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement, for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Class Representatives' Request to Recover Reasonable Costs and Expenses ("Graham Declaration"), and Attached hereto as Exhibit 4 is the Declaration of Shaun Shen in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement, for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Class Representatives' Request to Recover Reasonable Costs and Expenses ("Shen Declaration"). There have been no objections to date received to the concept of making as award to Class Representatives for the risks they bore and the contribution they made to the resolution of the action.

79. This requested award is justified in light of Class Representatives' efforts and to compensate them for the time they spent working on this case. Detailed in the Graham Declaration and the Shen Declaration, Class Representatives read over the pleadings, prepared for and sat for depositions, consulted with Class Counsel about settlement negotiations, reviewed settlement proposals, and spoke with Class Counsel often about the action.

80. Given the contributions and the time and effort expended by Class Representatives, the requested awards are warranted and should be approved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)

| | | |
|---|---|---|
| 1 | Dated: November 15, 2017 | Respectfully Submitted, |
| 2 | | **THE ROSEN LAW FIRM, P.A.** |
| 3 | | /s/ Laurence M. Rosen |
| 4 | | Laurence M. Rosen, Esq.<br>355 South Grand Avenue, Suite 2450 |
| 5 | | Los Angeles, CA 90071<br>Telephone: (213) 785-2610 |
| 6 | | Facsimile: (213) 226-2684<br>Email: lrosen@rosenlegal.com |
| 7 | | |
| 8 | | Jonathan Stern, Esq. (*pro hac vice*) |
| 9 | | 275 Madison Avenue, 34th Floor<br>New York, NY 10016 |
| 10 | | Telephone: (212) 686-1060<br>Facsimile: (212) 202-3827 |
| 11 | | Email: jstern@rosenlegal.com |
| 12 | | *Class Counsel for Class Representatives* |
| 13 | | *and the Class* |

17

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF CLASS REPRESENTATIVES' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; CASE NO. 14-CV-0722(SI)