THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

*Class Counsel for Class
Representatives and the Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re MONTAGE TECHNOLOGY GROUP LIMITED SECURITIES LITIGATION | Master File No 14-cv-0722 (SI) |
| | <u>CLASS ACTION</u> |
| This Document Relates To:  All Actions | |

**<u>NOTICE OF CLASS REPRESENTATIVES' MOTION FOR AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT OF EXPENSES, AND AWARD TO CLASS REPRESENTATIVES</u>**

PLEASE TAKE NOTICE that at 2:00 p.m. on December 15, 2017, or as soon thereafter as counsel may be heard, before the Honorable Susan Illston, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, California, Class Representatives Martin Graham and Shaun Shen ("Class Representatives") will move for move for an order awarding attorneys' fees, authorizing reimbursement of expenses for Class Counsel, and incentive awards to Class Representatives.

The grounds for this motion are that the requested award of fees and expenses to Class Counsel are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

i

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration of Laurence M. Rosen in Support of Class Representatives' Motions for (1) Final Approval of the Proposed Class Action Settlement and Plan of Allocation, and (2) Approval of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Rosen Declaration"); and the exhibits filed therewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether consideration of the relevant factors justifies a fee award of one-third of the Settlement Amount.

2.      Whether Class Counsel's expenses were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed.

3.      Whether Class Representatives are entitled to an incentive award in the amount of $10,000 each, or $20,000 in total.

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     SPECIFIC EFFORTS OF CLASS COUNSEL .................................................... 3

III.    REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES ..................... 4

    A.   The Common Fund Doctrine ........................................................................ 4

    B.   The Percentage-of-Fund Approach ............................................................. 5

    C.   Courts in This Circuit Have Awarded One-Third of The Common Fund as a Reasonable Fee in Similar Circumstances ......................................................... 6

IV.     AN AWARD OF ONE-THIRD OF THE SETTLEMENT FUND IS REASONABLE IN THIS CASE ...................................................................................................... 6

    A.   Class Counsel Achieved An Excellent Result For The Class ..................... 6

    B.   The Risks Of The Litigation ........................................................................ 8

    C.   The Skill Required And The Quality And Efficiency Of The Work ............. 10

    D.   The Contingent Nature of The Case And The Financial Burden Carried by The Class Counsel ........................................................................................... 10

    E.   The Customary Fee .................................................................................. 11

    F.   A Lodestar Cross-Check Shows the Fee Request Is Reasonable .............. 12

    V.   The Reaction of The Class Supports The Requested Award ...................... 12

VI.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ........................................................ 13

VII.    THE AWARD TO CLASS REPRESENTATIVES SHOULD BE APPROVED ......... 14

VIII.   CONCLUSION ................................................................................................. 16

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

**TABLE OF AUTHORITIES**

**Cases**

*Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995) ........................................................ 14

*Accord Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ....................................................... 6

*Arenson v. Bd. of Trade*,  372 F. Supp. 1349 (N.D. Ill. 1974) ................................................. 10

*Blum v. Stevenson*,  465 U.S. 886 (1984) ............................................................................... 5

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722 (10th Cir. 1993) ........................... 14

*Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673 (N.D. Cal. June 30, 2011) ........................................................................................................................ 15

*Central Railroad. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) ...................................................................................................................................... 4

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ......................................... 12

*Eltman v. Grandma Lee's Inc.*, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ............................... 10

*Fischel v. Equitable Life Assur.*, 307 F.3d 997 (9th Cir. 2002) ................................................ 12

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84 (S.D.N.Y. 1990) ........ 14

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .................................................................. 14, 15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................... 7

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................................ 5, 6

*In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235 (D.N.J. 2000) ......................................... 7

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) .................................................. 6

*In re Cont'l Ill. Sec. Litig.*,  962 F.2d 566 (7th Cir. 1992) ..................................................... 5

*In re Crazy Eddie Sec. Litig.*,824 F. Supp. 320 (E.D.N.Y. 1993) ............................................ 12

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ............................ 10

*In re Giant Interatice Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) ................... 16

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................... 13, 14, 15

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) .......................................... 7, 10

*In re Linerboard Antitrust Litig.*,

    2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................. 12

*In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747 (S.D. Cal. 1990)........................................... 11

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733 (S.D.N.Y. 1994).... 14, 15

*In re Medical X-Ray Film Antitrust Litig.*,

    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .................................................. 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)........................................... 6

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................ 10

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................... 6

*In re Ravisent Sec. Litig.*, 2005 WL 906361 (E.D. Pa. April 18, 2005) ...................................... 12

*In re Safety Components*, 166 F. Supp.2d 72 (D.N.J. 2001)....................................................... 12

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,

    724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................ 6

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*,631 F.3d 913 (8th Cir. 2011) ............. 15

*In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815 (3d Cir. 2010).............................. 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...... 5, 6, 8, 11

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) ...... 16

*Kirchoff v. Flynn*,  786 F.2d 320 (7th Cir. 1986) ................................................................. 5, 12

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) . 8

*MiltlandRaleigh-Durham v. Myers*,

    840 F. Supp. 235 (S.D.N.Y. 1993) ........................................................... 14

*Morris v. Lifescan, Inc.*, 54 Fed. App. 663 (9th Cir. 2003) ...................................................... 6, 7

*Paul, Johnson, Alston & Hunt v. Graulty*,

    886 F.2d 268 (9th Cir. 1989)............................................................... 4, 5, 6

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)........................ 5

*Thornberry v. Delta Air Lines*,676 F.2d 1240 (9th Cir. 1982)..................................................... 14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................... 5

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ................................................. 4

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees,
Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002) ............................................................ 8, 12

**Rules**

15 U.S.C. § 78u-4(a)(6) ...................................................................... 6

15 U.S.C. §78u-4(a)(4) ...................................................................... 15

**Other Authority**

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d. Cir. 2001) ............................... 8

Richard Posner, *Economic Analysis of Law*, §21.9 (3d ed.1986) ....................... 11

**Statutes**

Federal Rule of Civil Procedure 23(e) ........................................................ 1

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

## MEMORANDUM OF POINTS AND AUTHORITIES

Class Representatives Martin Graham and Shaun Shen ("Class Representatives") through their undersigned counsel, submit this memorandum of law in support of their Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of one-third of the Gross Settlement Fund, or $2,416,666 and awards to Class Representatives totaling $20,000, or $10,000 each); and (2) reimbursement of $433,719.65 in expenses that were incurred in prosecuting this Action (the "Fee Petition").

## I.    INTRODUCTION[1]

Through the efforts of Class Counsel, as described more fully in the Declaration of Laurence M. Rosen in Support of Class Representatives' Motions for (1) Final Approval of Class Action Settlement and (2) Approval of Attorneys' Fees and Expenses filed herewith ("Rosen Decl." or "Rosen Declaration"), have achieved a substantial settlement consisting of a $7,250,000 cash payment. Class Counsel requests an award of fees in the amount one-third of the Gross Settlement Fund or $2,416,666, and an award of $10,000 to each Class Representative, totaling $20,000. Class Counsel also requests reimbursement from the Settlement Fund of $433,719.65 in expenses.

The Settlement represents a recovery of 24.39% of Class Representatives' best case estimate of damages for the Class. It is an excellent result, particularly when viewed in light of the considerable risks posed by continued litigation and uncertainty of proving liability and obtaining and collecting a larger judgment. *E.g.,* Rosen Decl., ¶¶ 42-45. This recovery is entirely attributable to Class Counsel's steadfast litigation efforts as Defendants' offers to resolve this litigation did not even approach the Settlement Amount until Class Counsel had pursued this case to an advanced stage.  Rosen Decl., ¶9.

---

[1]   Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on July 10, 2017 (Dkt. No. 130-1).

The reaction of the Class also strongly supports the requested fee.  The deadline to file objections and to request exclusion to the Settlement is November 27, 2017. To date, no objections or requests for exclusion have been received by Class Counsel. Declaration of Josephine Bravata Concerning the Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release ("Bravata Decl.") ¶¶11-12, attached as Exhibit 1 to the Declaration Laurence M. Rosen in Support of the Motions for (1) Final Approval of the Class Action Settlement and Plan of Allocation and (2) Approval of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Rosen Declaration"). Pursuant to the Order Granting Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (Dkt. No. 137), 11,517 Notices and Claims Forms were mailed to Class Members. *See* Bravata Decl., ¶6. The Notice advised Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees representing up to one-third of the Gross Settlement Fund and an award to Class Representatives not to exceed $20,000 in total, or $10,000 each, and that Class Counsel would seek reimbursement of Class Counsel's out-of-pocket expenses not to exceed $700,000.  *See* Bravata Decl., Ex. A.

The fairness and reasonableness of the requested fee is confirmed when cross-checked with Class Counsel's lodestar. Class Counsel spent a total of 2,250.9 hours of professional time having a market value of approximately $1,347,967 in prosecuting this litigation, and results in a multiplier of 1.79—which is low compared to multipliers approved by Courts.

The Settlement could not have been achieved but for Class Representatives' and Class Counsel's persistent and extensive litigation of this matter. While the Parties engaged in two mediations, one in November 2014 and another in March 2017, the amount offered by Defendants at the first mediation was not close to the Settlement Amount.  Only by doggedly pursuing this action to this late stage of litigation did Class Counsel achieve this excellent result.

For the reasons set forth more fully below, Class Counsel respectfully submits that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

2

## II. SPECIFIC EFFORTS OF CLASS COUNSEL

This brief description of the litigation reveals not only the complexities of the case, but also the host of factual and legal issues that Class Counsel had to address convincingly in order to achieve the Settlement. As explained in the Rosen Declaration, the substantial work performed by Class Counsel includes:

- reviewed and analyzed publicly available information about Montage including the Company's SEC filings, news articles, conference call transcripts, analyst reports, and stock trading data;

- consulted with and retained experts relating to damages, market efficiency, statistics, accounting, and People's Republic of China ("PRC") securities laws;

- filed multiple complaints including the operative Consolidated Amended Class Action Complaint (the "Complaint");

- successfully wrote a brief in opposition to Defendants' motion to dismiss;

- conducted substantial discovery including document production, interrogatories, third-party subpoenas, and defended and took depositions;

- traveled to PRC to review documents subject to PRC secrecy laws;

- fully briefed a motion for class certification and an opposition to a motion to exclude;

- engaged in frequent settlement negotiations throughout the litigation, including two all-day mediations with David Geronemus, Esq. of JAMS and Hon. Layn Phillips (Ret.); and

- negotiated and drafted the Stipulation of Settlement and Notice to class members.

Class Counsel's effort to resolve this litigation successfully has been without compensation of any kind, and payment of attorneys' fees and reimbursement of expenses were and always has been wholly contingent upon the result achieved.

As compensation for these efforts, Class Counsel requests that the Court award attorneys' fees of one-third of the Settlement Fund ($2,416,666) plus $433,719.65 in unreimbursed expenses. Class Counsel's one-third fee request is not only consistent with a great number of decisions, both in this Circuit and across the country, but is appropriate compensation for the result Counsel has obtained for the Class.

3

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

Finally, the Court should consider Class Members' reaction to the award sought. 11,517 Notice and Claim Forms were mailed to potential members of the Settlement Class. *See* Bravata Decl., ¶6. The Notice advised Class members of the terms of this Settlement, the proposed attorneys' fees, award to Class Representatives, the expenses request, and of Class Members' right to object and/or opt out. The Class also was informed that Class Counsel could apply for a fee of up to one-third of the settlement amount. *Id*., Ex. A. The deadline to object or request exclusion is November 27, 2017 and to date, there have been no objections to the requested fee or any requests for exclusion of the Settlement. *See Id*., ¶¶11-12. For the reasons set forth herein, the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards.

## III.   REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A.      The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...] The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original; citations omitted). The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

4

**B.      The Percentage-of-Fund Approach**

In *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. There are compelling reasons why so many courts have opted for the percentage approach in common fund cases. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[2] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances.[3] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79.[4]

---

[2] *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees).

[3] *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

[4] *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C. Courts in This Circuit Have Awarded One-Third of The Common Fund as a Reasonable Fee in Similar Circumstances

In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted upward or downward depending on the circumstances of the particular case. *Accord Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *but see Activision*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund fee awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Indeed, it is not unusual for courts to award fee of approximately one-third in appropriate circumstances. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003) (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement). The Ninth Circuit has noted that factors that favor fees in this range are exceptional results, complex issues, and risk. *Morris v. Lifescan, Inc.*, 54 Fed. App. *Id.* 664 (9th Cir. 2003)

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted). The attorneys' fee requested here is in line with the Ninth Circuit benchmark, and is well within the range of percentages courts in this Circuit have awarded in similar securities class action settlements.

## IV. AN AWARD OF ONE-THIRD OF THE SETTLEMENT FUND IS REASONABLE IN THIS CASE

### A. Class Counsel Achieved An Excellent Result For The Class

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most

6

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

critical factor is the degree of success obtained"); *Morris*, 54 Fed. Appx. at 664 (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

The Settlement Fund created here consisting of $7,250,000 (plus interest) is an excellent result. This amount, representing 24.39% of the Class' maximum estimated recoverable damages of $29,716,477 is a significant recovery. Rosen Decl., ¶53. The 24.39% recovery is substantially higher than the median settlement value as a percentage of damages for cases of this size. According to Cornerstone Research, in 2016 the median settlement as a percentage of estimated damages for settlements in cases with estimated damages under $50 million was 7.3%. Securities Class Action Settlements: 2016 Review and Analysis at 8 (Cornerstone Research, 2017)[5] *see, also, In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235, 245 (D.N.J. 2000)(citing: (1) study of 377 securities class action settlements which found that the average settlement comprises between 9% and 14% of claimed damages and (2) cases which settled for 1.6% - 10% of claimed damages). These figures are based on the gross recovery in cases, before the deduction of attorneys' fees and expenses. *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).

The Settlement provides Class Members with 24.39% of Class Representatives' estimated best possible result, assuming not only complete victory at trial and at the appellate levels, but Defendants' unlimited resources for payment of a judgment and collection of that judgment in PRC. Counsel for Class Representatives negotiated a settlement representing a percentage of the alleged loss that exceeds many of those above-referenced commendable settlements where the courts awarded even greater fees. Thus, the results achieved by Class

---

[5] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12- 2016-Review.pdf. Last viewed on November 15, 2017.

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

Counsel, in light of the legal and factual complexity and magnitude of this case and the significant difficulties of establishing both liability and damages, are adequate, justifying an award of one-third.

**B.      The Risks Of The Litigation**

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). That, as here, the case is "fraught with risk and recovery was far from certain" is a relevant circumstance which the Court must take into account. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Though Class Representatives and Class Counsel were confident that their claims were meritorious, Class Representatives nonetheless faced substantial risks in pursuing this action. First, because Montage's operations were principally conducted in the PRC, Class Representatives faced substantial challenges in obtaining admissible evidence.  The taking of depositions is forbidden within the territory of the PRC.[6] Therefore, any party depositions would have been required to have been taken in Hong Kong.  In addition, because of China's ban on depositions, China would also not have issued letters rogatory to allow compulsory taking of third party depositions or production or documents. As a result, it would have been impossible to compel the deposition of any non-employee or former employee or obtain third party documents. In the context of this case in particular, such a challenge was of particular concern because of the nature of the allegations which concerned the fact that Montage engaged in related party transactions with non-party entities that were, during the class period, secretly under the control of Montage. However, Class Counsel has no basis to believe that Montage still controls those entities. Therefore, Class Representatives could not have

---

[6] "China does not permit attorneys to take depositions in China for use in foreign courts." U.S. State Department, International Judicial Assistance: Country Information—Taking Voluntary Depositions of Willing Witnesses (available at: http://travel.state.gov/content/travel/english/legal-considerations/judicial/country/china.html)

compelled depositions of their officers or employees, and could not have obtained documents in discovery from those entities.

Class Representatives also faced substantial risks in this action due to the fact that it turned on technical accounting questions. A "related party transaction" is a technical accounting term under U.S. and Chinese GAAP, and Class Representatives would have been required to retain both American and Chinese accounting experts to establish that Montage had engaged in such transactions. Defendants doubtless would have retained their own experts, and challenged such a contention. Thus, the issue of falsity would likely have become a battle of the experts.

Class Representatives also faced risks in proving loss causation. Class Representatives are aware that Defendants intended to argue, as they had in earlier phases in the case, that the decline in Montage's stock was due not to the revelation of related party transactions, but to allegations that Montage was fabricating revenue. While the Court rejected this argument at the pleading and class certification stages, Defendants certainly would have advanced it again at trial, and there is no guarantee that the jury would not have accepted it.

In addition to risks involved in establishing liability and damages, there would have been substantial risk in attempting to enforce any judgment. Plaintiffs faced the possibility that Defendants' insurers would not deny coverage if this case had not settled, and Plaintiffs would have faced substantial hurdles in attempting to enforce a judgment in the PRC as it does not recognize U.S. judgments.[7] Difficulties in this regard would have been exacerbated considerably in this case because Montage is now state-owned, as collecting a judgment in PRC against a government entity would be particularly difficult.

---

[7] *See* Dan Harris, Chart on Enforcing Judgments Around the World, Including China, China Law Blog (June 22, 2013) ("When it comes to enforcing US court judgments in China, the law has been clear and remains clear. China won't do it. Not now. Not later. Maybe not ever.") (available at: http://www.chinalawblog.com/2013/06/chart-on-enforcing-judgments-around-the-world-including-china.html); Jason Hsu, *Judgment Unenforceability in China*, 19 Fordham J. Corp. & Fin. L. 201 (2013).

C.      The Skill Required And The Quality And Efficiency Of The Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Here, the quality of Class Counsel's work on this case is reflected in the excellent result obtained. The prior experience of Class Counsel is relevant in determining fair compensation. *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).  Attached as Exhibit 2 to the Rosen Declaration is the Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") that includes a description of the background and experience of Class As that submission and the Rosen Declaration demonstrate, Class Counsel has extensive and significant experience in the highly specialized field of securities class action litigation.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Class Representatives were opposed in this litigation by nationally respected firm, O'Melveny & Myers, LLP.  *See* Rosen Decl., ¶72.

At every stage of the proceedings, Class Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Class Counsel assembled a case that survived Defendants' numerous attacks. Moreover, Class Representatives evaluated the merits and risks presented, negotiated a very favorable amount for the Class, and settled the litigation on an excellent basis for the Class. Such quality, efficiency, and dedication should be rewarded.

D.      The Contingent Nature of The Case And The Financial Burden Carried by The Class Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement:

10

It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.

*See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Class Counsel has received no compensation over the course of the litigation, lasting over three and a half years, and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. *See* Rosen Decl., ¶¶67-77.

**E.    The Customary Fee**

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Class Counsel's request is quite reasonable.

Class Counsel's efforts were performed and the result was achieved on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, it necessarily follows that Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. Under all of the circumstances present here, a one-third fee plus expenses is fair and reasonable.

11

### F.      A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050. Significantly, in securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, the risks assumed by counsel, and the quality of the result achieved for the Class.[8]

Here, the total lodestar for Class Counsel is $1,347,967. *See* Rosen Decl. ¶74. Thus, Class Counsel's fee request is equal to approximately 1.79 times the lodestar, which is in the range typically approved by Courts. *See* Rosen Decl., ¶75. Given that more than half of securities class actions are unsuccessful and result in no recovery, the risk Class Counsel has born justifies the modest lodestar multiplier in this case. Thus, this factor supports the requested fee.

### V.  The Reaction of The Class Supports The Requested Award

Over 11,000 Claim Packets were mailed to potential Settlement Class Members and a Summary Notice was published on *GlobeNewswire* and *PR Newswire* and made available to the public on the Claims Administrator's website. Bravata Decl., ¶¶6, 9. Settlement Class

---

[8]     *See In re Ravisent Sec. Litig.*, 2005 WL 906361, *12 (E.D. Pa. April 18, 2005) (fee represented a multiplier of 3.1 of the lodestar); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *16 (E.D. Pa. June 2, 2004) (noting that from 2001 through 2003, the average multiplier approved in common fund cases was 4.35); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150-51 (E.D. Pa. 2000) (lodestar of $1.2 million would require multiplier of 2.04 in order to match awarded fees of one-third of $7.3 million common fund); *In re Safety Components*, 166 F. Supp.2d 72, 103 (D.N.J. 2001) (lodestar of $534,000 would require multiplier of 2.81 in order to match awarded fees of $1.5 million); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (fee represented a multiplier on the attorneys' lodestar of 1.67); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (the equivalent of a 1.72 multiplier was applied to the attorneys' lodestar).

Members were informed in the Notice that Class Counsel would apply for attorneys' fees of up to one-third of the Gross Settlement Fund, plus reimbursement of litigation costs and expenses not to exceed $700,000, plus interest, and were advised of their right to object to Class Counsel's fee request. Although there was an extensive notice program, no objections to Class Counsel's fee request have been received. *Id.*, ¶12. This demonstrates that the Class overwhelmingly supports the Settlement.

## VI. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's expenses are reasonable and were necessarily incurred as a part of Counsel's efforts to achieve an excellent recovery for the Class. Class Counsel has incurred expenses in an aggregate amount of $433,719.65 in prosecuting this litigation. These expenses are detailed in the Rosen Fee Declaration. The Notice apprised the Class Members that Class Counsel would seek expenses in an amount not to exceed $700,000.

The Court should approve Class Representatives' request for reimbursement of Class Counsel's expenses. "Reimbursement of taxable costs [in class action settlements] is governed by 28 U.S.C. § 1920 and Federal Rule of Civil procedure 54." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Courts interpreting these rules have found that counsel for the Class are entitled to reimbursement for those types of out-of-pocket expenses that an attorney would normally expect the client to pay. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client") (citation omitted); *see also Immune Response*, 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation omitted).

13

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

Class Counsel has pursued this litigation knowing that its expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Rosen Decl. ¶14. Class Counsel has had no incentive to incur – and did not incur– unnecessary expenses. The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to paying clients and, therefore, should be reimbursed out of the common fund.

Among the significant expenses incurred by Class Counsel on behalf of the Class was the cost of retaining a damages expert, market efficiency and class certification experts, a statistics expert, an accounting expert, a PRC securities law expert, translation services, class notice expenses, mediation fees, document hosting fees, and travel[9]– all of which was necessary for the successful prosecution and resolution of the Litigation on behalf of the Class. *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177. Other expenses include the cost of computerized legal research using Westlaw and Pacer, which should be (and are routinely) reimbursed. *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011).

Similarly, photocopying and scanning costs associated with document retrieval and filing, ECF filings, and comparable costs are customarily reimbursed in common fund cases. *See Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *McDonnell Douglas*, 842 F. Supp. at 746.

## VII.    THE AWARD TO CLASS REPRESENTATIVES SHOULD BE APPROVED

Class Representatives also request that the Court award them $20,000 in total, or $10,000 each, in connection with their lost time in his representation of the Settlement Class.

---

[9] Travel and lodging expenses were necessary to the prosecution of the action, were reasonable in amount and are properly charged against the fund created. *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4). Class Representatives have diligently and completely fulfilled their obligations as representatives in the present action by: (1) reviewing pleadings and briefs in the action; (2) reviewing court orders and discussed with Class Counsel; (3) preparing for and sitting for a deposition; (4) producing documents to Defendants; (5) consulting with Class Counsel about settlement negotiations; (6) evaluating and approving the Settlement; and (7) reviewing the significant filings and order related to preliminary approval. *See* Exhibits 3 and 4 of Rosen Declaration, the Declaration of Martin Graham in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement, for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Class Representatives' Request to Recover Reasonable Costs and Expenses ("Graham Declaration") and Declaration of Shaun Shen in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement, for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Class Representatives' Request to Recover Reasonable Costs and Expenses ("Shen Declaration"). Courts routinely award class representatives greater amounts. *E.g. In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff, $5,000 to class representatives); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interatice Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

In short, an award of $10,000 to each Class Representative, or $20,000 in total, is warranted.

15

Class Representatives' Memorandum of Law in Support of An Award of Attorneys' Fees, Reimbursement of Expenses, And Award to Class Representatives; Case No. 14-cv-00722-(SI)

## VIII.   CONCLUSION

Securities class actions are complex and laden with risk. There are numerous examples where Class Counsel, in cases such as this, after the expenditure of thousands of hours, has received no compensation whatsoever. This complex litigation has been extremely hard-fought. From the beginning, Class Representatives have been faced with determined adversaries represented by experienced and equally determined defense counsel. Without any assurance of success, Class Representative, and their counsel pursued this litigation to an excellent conclusion. The Settlement represents a fair recovery on behalf of the class and reflects the skill and dedication of Class Counsel. It is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Class Counsel one-third of the Gross Settlement Fund plus reimbursement of $433,719.65 of expenses, plus interest earned thereon at the same rate and for the same period as that earned on the Gross Settlement Fund until paid, and an award of $10,000 to each Class Representative, totaling $20,000.

Dated: November 15, 2017                    Respectfully Submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            /s/Laurence M. Rosen
                                            Laurence M. Rosen, Esq.
                                            355 South Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-2684
                                            Email: lrosen@rosenlegal.com

                                            Jonathan Stern, Esq. (*pro hac vice*)
                                            275 Madison Avenue, 34th Floor
                                            New York, NY 10016
                                            Telephone: (212) 686-1060
                                            Facsimile: (212) 202-3827
                                            Email: jstern@rosenlegal.com

                                            *Class Counsel for Class*
                                            *Representatives and the Class*